**SPIEGEL, INC., Petitioner,**

v.

**FEDERAL TRADE COMMISSION,**
Respondent.

No. 17210.

United States Court of Appeals
Seventh Circuit.

June 11, 1969.

Patrick W. O'Brien, James W. Gladden, Jr., Chicago, Ill., for petitioner; Mayer, Friedlich, Spiess, Tierney, Brown & Platt, Chicago, Ill., of counsel.

J. B. Truly, Robert E. Duncan, Asst. Gen. Counsel, James McI. Henderson, Gen. Counsel, Alvin L. Berman, Atty., F. T. C., Washington, D. C., for respondent.

Before DUFFY, Senior Circuit Judge, KERNER, Circuit Judge and BEAMER, District Judge.[1]

DUFFY, Senior Circuit Judge.

This is a petition for a review of a cease and desist order of the Federal Trade Commission issued at the conclusion of an administrative hearing upon a complaint filed by the Commission which charged Spiegel, Inc. (Spiegel) with engaging in unfair methods of competition and deceptive acts and practices in promoting and advertising certain items of merchandise.

The Federal Trade Commission contends that in the period of 1962 to 1964, Spiegel violated Section 5 of the Federal Trade Commission Act (15 U.S.C. § 45) by offering for sale in its catalogs, seven items of merchandise, the advertisements for which it claims were false and misleading.

Spiegel, located in Chicago, Illinois, is a catalog house which sells its merchandise exclusively by mail order. Two major catalogs are issued each year. In addition, Spiegel regularly issues supplementary sales and seasonal catalogs.

In some of the supplementary catalogs, Spiegel used a merchandise technique known as the "dollar sale." Among the lines of merchandise which it advertised in this manner were seven items: Williamstown Heirloom Bedspreads; St. Mary's Blankets; Fruit of the Loom Quilts; Pacific Percale Sheets; Acrilan Comforters; Beacon Blankets and Ladies' Pump style Shoes.[2]

To illustrate the type of advertisement to which the Trade Commission objected, we refer to Exhibit A which is reproduced in the printed appendix. There appears a picture of two double beds each having a bedspread. A wide arrow is pointed at one of the bedspreads and carries the slogan "Get This Second Spread for Only $1 More." At the bottom of the advertisement is the name "Williamstown" heirloom bedspreads, and the price stated is "only 9.98 each any 2 for 10.98" In fine print after describing the bedspreads there appears: "Save $8.98 when you buy any two spreads."[3] It is admitted by the Commission that any customer

---

1. Judge Beamer is sitting by designation from Northern District of Indiana.

2. The examiner recommended and the Commission approved and so ordered that the complaint herein be dismissed insofar as same pertained to Ladies Pump style Shoes.

3. There was some variation in the advertisements for the sale of Williamstown bedspreads. In one exhibit the advertisement stated: "Get this Bedspread for only one dollar with purchase of this regular $9.98 bedspread." In small print appears "Save to $8.98 on special purchase! Two of these luxurious Williamstown spreads are yours for only $1 more than the regular price of one."

could have purchased one such spread for $9.98 or two for $10.98.

In advertisements for Fruit of the Loom Quilts, the price of one such quilt was listed as $8.98 each, two at $9.98. In small print appeared "Save $7.98 when you buy two of these quality brand quilts." The Commission admits that any customer could have purchased one such quilt for $8.98 or two for $9.98.

In the advertisement for the sale of St. Mary's blankets, the price given was two for $11.96 or three for $12.96. The arrow at the top of the picture carries the slogan "Get This Third Blanket for Only $1 More When You buy 2 for $11.96." At the bottom of the advertisement, in small print it is stated: "During this sale you can get three nationally known St. Mary's blankets for only $1 more than the low price of two." It is admitted by the Commission that any customer could have purchased two of these blankets for $11.96 or three blankets for $12.96.

The advertisements for the sale of Acrilan Comforters, Beacon Blankets and Pacific Percale Sheets need not be described in detail. Spiegel used substantially the same format of words and figures in such ads as it had used in the advertisements hereinbefore described.

It is true that in some of its advertisements, Spiegel did not expressly use the word "regular" in connection with the price asked for the merchandise. However, the Commission found that the language and illustrations which were used clearly implied that the unit price stated was Spiegel's regular and usual price, and that the combination sale was for a specially reduced price.

Of the fifty-one advertisements involved, forty-one stated that a savings could be realized in the purchase of the items in combination. Nineteen of the fifty-one advertisements expressly referred to a "regular" price. In twenty-five of the fifty-one advertisements, statements such as "special purchase", "now sale priced", "amazing offer", "once-in-a-lifetime chance", or "now one of the greatest offers we've made", indi-cate that the combination offer is an unusual opportunity in comparison with previous prices for the articles. Each catalog stated that the "sale" ends at a specific time.

■ The meaning and "impression upon the mind of the reader arises from the sum total of not only what is said but also of all that is reasonably implied." Aronberg v. Federal Trade Commission (7 Cir., 1942), 132 F.2d 165, 167.

Since Spiegel does not operate any retail stores and all of its business is conducted by catalog, a consumer was and is unable physically to inspect the advertised items prior to a purchase. Therefore, a fictitious price or a fictitious claim of savings constitutes a material influence on the consumer's decision to purchase.

■ It long has been held a deceptive practice violative of the Federal Trade Commission Act to misrepresent a product's usual and regular price and the savings available to a purchaser, and this includes such misrepresentations made in the course of combination sales. Federal Trade Commission v. Standard Educational Society (1937), 302 U.S. 112, 114–117, 58 S.Ct. 113, 82 L.Ed. 141; Kalwajtys v. Federal Trade Commission (7 Cir., 1956), 237 F.2d 654, 656, cert. den. 352 U.S. 1025, 77 S.Ct. 591, 1 L.Ed.2d 597.

■ The Commission held that a "regular price" is the price at which an article or service is openly and actively sold by the advertiser to the public on a regular basis for a reasonably substantial period of time in the recent and regular course of business.

The Commission also held that if a sale is made on the representation that a specified saving will be made by purchasing a second item for an additional dollar, the claim must relate to the price applicable prior to the sale.

The Commission further found that from 1962 through 1964, Spiegel never sold or offered as single units the six items on a regular basis for a substantial period of time.

True it is that Spiegel referred to various prices advertised for the sale of bedspreads, quilts, blankets and sheets wherein the articles were offered singly. Spiegel claims that this established a prior regular price for such articles. However, the Commission proved in all such cases that such items carried a different catalog number from those which were offered in combination, and that they varied in texture and in size from the articles offered in the dollar sales.

The crux of the decision of the Commission is its finding that Spiegel misrepresented the regular price and savings to purchasers of its merchandise in fifty-one advertisements involving six products.

■ This Court has stated that "Misrepresentations of the regular and customary value of a product offered for sale and of savings afforded by an offered sale price of such product are unfair and deceptive practices as defined by the Act." Niresk Industries, Inc. v. Federal Trade Commission, 7 Cir., 1960, 278 F.2d 337, 340.

■ Although we sustain the critical findings of the Commission, we do not think the violation of the statute was aggravated and we also think the proposed order is too broad.[4]

Commissioner Elman in his dissent herein stated: "While I agree that the 'dollar sale' advertisements were ambiguous and might conceivably have misled some consumers, I do not think a cease and desist order is required. Apart from the absence of any substantial showing of deception, respondent completely discontinued this form of advertising more than a year before the complaint issued. In any event there is no justification for the imprecisely drawn, excessively broad order entered by the Commission. This is the kind of case which the Commission routinely closes upon the filing of adequate assurances of voluntary compliance under Section 2.21 of the Rules of Practice. * * * [T]he issuance of a cease and desist order now serves no public purpose."

■ We recognize that the Commission has wide discretion in its choice of a remedy; yet, the reasoning of Commissioner Elman in his dissent is so persuasive, with his reference to "the imprecisely drawn, excessively broad order entered by the Commission" that we have concluded some modifications of the proposed order should be made.

■ Paragraph 3 of the Commission's order prohibits "Misrepresenting in any manner the savings available to purchasers of respondent's merchandise." This provision is so broad and imprecise that Spiegel might well be fearful of advertising any kind of sale of its merchandise in the future.

■ An order is too broad if it bears "no reasonable relation to the unlawful practices found" Jacob Siegel Co. v. Fed-

4. ORDER

IT IS ORDERED that respondent Spiegel, Inc., a corporation, and its officers, and respondent's agents, representatives and employees, directly or through any corporate or other device, in connection with the offering for sale, sale and distribution of bedspreads, quilts, blankets or any other product in commerce, as "commerce" is defined in the Federal Trade Commission Act do forthwith cease and desist from:

1. Representing, directly or by implication, that any price is respondent's former or usual price for said products when such amount is in excess of the actual, bona fide price at which respondent offered or sold the said products to the public for a reasonably substantial period of time in the recent, regular course of business.

2. Representing, directly or by implication, through the device of a one dollar sale, or in any other manner, that a stated number of units of respondent's merchandise may be purchased for the price of one or more units, plus one dollar, or any other amount, when the price of the unit or units required to be purchased is in excess of the actual, bona fide price at which respondent offered or sold the said merchandise to the public for a reasonably substantial period of time in the recent, regular course of its business.

3. Misrepresenting, in any manner, the savings available to purchasers of respondent's merchandise.

eral Trade Commission, 327 U.S. 608, 613, 66 S.Ct. 758, 760, 90 L.Ed. 888 (1946), or if it forbids activities other than those "which if continued would directly aid in perpetuating the same old unlawful practices." Federal Trade Commission v. Cement Institute, 333 U.S. 683, 727, 68 S.Ct. 793, 816, 92 L.Ed. 1010 (1948).

The order in this instance should be limited to the type of sale found violative here. Paragraph 3 should be stricken. We affirm the order of the Federal Trade Commission here at issue and its proposed order, except that we direct that Paragraph 3 of such order be eliminated.

Modified and affirmed.