731 P.2d 106

**Sterling C. WARD, Jr., and Martha Ward, husband and wife, Plaintiffs-Appellants,**

v.

**FIREMAN'S FUND INSURANCE COMPANIES, a California corporation, Defendant-Appellee.**

**No. 1 CA–CIV 8521.**

Court of Appeals of Arizona, Division 1, Department C.

Aug. 21, 1986.

Review Denied Jan. 6, 1987.

Patten, Montague & Arnett, P.C. by Wayne C. Arnett, Tempe, for plaintiffs-appellants.

Jennings, Kepner & Haug by Craig R. Kepner and Steven S. Guy, Phoenix, for defendant-appellee.

## OPINION

PAUL G. ULRICH, Judge Pro Tem.

The question presented in this appeal is whether the trial court properly granted appellee insurer's motion for partial summary judgment on three counts of appellants' complaint alleging bad faith in denying a claim pursuant to an automobile insurance policy and violations of A.R.S. § 44–1481 (prohibiting fraudulent advertising practices) and § 20–441 *et seq.* (proscribing unfair insurance practices).

## FACTS

Viewing the evidence and all inferences reasonably drawn therefrom most favorably to appellants, *Schroeder v. Hudgins,* 142 Ariz. 395, 690 P.2d 114 (App.1984), the facts essential to resolution of the appeal are as follows. Appellants Sterling and Martha Ward purchased an "Economy Plus Automobile Policy" from appellee Fireman's Fund Insurance Company through the Mirick-Patterson Insurance Agency in December, 1977. The comprehensive coverage portion of the issued policy clearly and unambiguously provided coverage for loss caused other than by collision for an insured driving a non-owned vehicle.[1] The Wards continued to pay premiums thereafter to maintain their insurance coverage in effect. On March 7, 1981, Martha Ward borrowed her sister's 1976 AMC Pacer automobile to run personal errands. The vehicle stalled at an intersection, overheated and was destroyed by fire. Mrs. Ward and her son escaped the vehicle unharmed. The cause of the fire was never established.

On March 9, 1981, Mrs. Ward contacted an agent at Ag-Com Insurance Agency, successor in interest to Mirick-Patterson. She was informed her policy did not cover the loss to her sister's vehicle. According to Mrs. Ward's deposition testimony, the agent stated: "Well, we are not going to pay for your sister's car ... your policy isn't right." On March 11, 1981, Sterling Ward filed a claim with the Fireman's Fund

---

1. The policy provided in relevant part the insurer agreed to "pay for loss caused other than by collision to the owned automobile *or to a non-owned automobile.*" (Emphasis added).

Phoenix office. The following day, appellants were contacted by a Fireman's Fund claims representative, who informed them their claim was denied.

The record indicates Fireman's Fund denied the claim because the "Economy Plus" automobile policy had been discontinued in 1978 and replaced with a "Personal Automobile Policy" that did not extend coverage to non-owned vehicles unless the insured was legally responsible for the loss.[2] Appellee allegedly gave its policyholders notice of the changes in coverage by mailing a "policyholder message" containing a brief summary of all significant alterations directly to its insureds and by mailing a copy of the new policy to its insurance agents to be countersigned and forwarded to insureds. Appellants have strongly denied receiving either document. For purposes of this appeal, appellee Fireman's Fund has conceded appellants did not receive either of these notices of changes in coverage. However, appellants have admitted they received periodic policy declaration sheets setting forth installment premium due dates which contained the policy title, form and number as well as a brief summary of their coverages. For all periods subsequent to June 6, 1978, the coverage summary contained the words "damage to your auto" preceding the references to "collision loss" and "other than collision loss," thus at least implying those coverages did not apply to other vehicles.

Appellants filed suit against Fireman's Fund on various theories of tort, contract and statutory liability.[3] The trial court granted appellee's motion for partial summary judgment on seven counts of appellants' complaint by minute entry dated September 12, 1983. The remaining contract claims were submitted to arbitration and a $2,800 arbitration award was issued in appellants' favor. Final judgment was entered by the trial court on June 24, 1985 as to all counts of their complaint. We have jurisdiction of this appeal pursuant to A.R.S. § 12–2101(B).

COUNT ONE: BAD FAITH

In order to establish a prima facie case of bad faith an insured must present some evidence of (1) the absence of a reasonable basis for the insurer's denial of policy benefits, and (2) the insurer's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim. *Noble v. Nat'l American Life Ins. Co.*, 128 Ariz. 188, 190, 624 P.2d 866, 868 (1981); *see also, Anderson v. Continental Ins. Co.*, 85 Wis.2d 675, 691, 271 N.W.2d 368, 376–77 (1978). More recently, our supreme court has indicated the primary focus of a bad faith inquiry is the reasonableness of the insurer's actions rather than its state of mind:

> Any action taken by the insurer on a claim submitted by an insured will necessarily be an intentional act. Whether the action amounts to bad faith depends upon whether the insurer failed to honor a claim without a reasonable basis for doing so.

*Sparks v. Republic Nat'l Life Ins. Co.*, 132 Ariz. 529, 538, 647 P.2d 1127, 1136 (1982). Determination of whether an insurer has

**2.** The Personal Auto Policy contains no specific reference to comprehensive or collision coverage for non-owned vehicles. Instead, part D provides: *"COVERAGE FOR DAMAGE TO YOUR AUTO* We will pay for direct and accidental loss to *your covered auto* ... However, we will pay for loss caused by *collision* only if the Declarations indicate that Collision Coverage is provided."* (Emphasis in original). Part A of the policy provides: *"LIABILITY COVERAGE* We will pay damages for bodily injury or property damage for which any *covered person* becomes legally responsible because of an auto accident."* (Emphasis in original). "Your covered auto" and "covered person" are in turn defined to exclude coverage for appellant's sister's vehicle under the facts surrounding the loss here involved.

**3.** Appellants also named Ag-Com Insurance Agency and two of its employees in the complaint. The trial court granted summary judgment in favor of all three defendants. While appellants have appealed from the final order incorporating the summary judgment, they have not briefed and have therefore waived any argument regarding the propriety of the trial court's judgment as to these defendants. *See DeElena v. Southern Pac. Co.*, 121 Ariz. 563, 576, 592 P.2d 759, 768 (1979); *Wasserman v. Low*, 143 Ariz. 4, 9 n. 4, 691 P.2d 716, 721 n. 4 (App.1984).

exercised reasonable care with respect to an insured necessarily requires examination of the facts and circumstances surrounding denial of the claim. In this regard,

> [i]t is appropriate ... to determine whether a claim was properly investigated and whether the results of the investigation were subjected to a reasonable evaluation and review.

*Anderson v. Continental Ins. Co., supra,* 85 Wis.2d 675, 692, 271 N.W.2d 368, 377. *Cf., Brown v. Superior Court,* 137 Ariz. 327, 336, 670 P.2d 725, 734 (1983) (stating bad faith actions "can only be proved by showing exactly how the company processed the claim, how thoroughly it was considered and why the company took the action it did ... the need for the information in the [claims] file is not only substantial, but overwhelming"). An insurer that has fulfilled its duty of reasonable care, as by conducting an adequate investigation, has the right to challenge and deny claims which are "fairly debatable" without subjecting itself to bad faith liability if its decision is ultimately held erroneous. *Noble; Anderson.*

Turning to the facts of the instant case, appellants produced a copy of the original policy which clearly provided coverage for the loss as well as deposition testimony by Mrs. Ward stating appellants had not received notice of any subsequent alteration in coverage. Appellee has not contested either point. Standing alone, this evidence establishes a basis for the argument Fireman's Fund was estopped to deny coverage under the original policy based on the language of a subsequently issued policy never received by appellants. *See General Ins. Co. v. Truly Nolen of America, Inc.,* 136 Ariz. 142, 664 P.2d 686 (App.1983) (holding an insured may assert estoppel against an insurer to extend coverage beyond the terms of a written insurance contract where the insured does not receive a copy of the insurance policy prior to the time the loss occurs).

Despite the evidence presented by appellants, appellee contends the claim was fairly debatable as a matter of law because the "Personal Automobile Policy" in effect at the time of the accident clearly and unambiguously excluded coverage for the loss. Appellee argues it was entitled to deny the claim on this basis and to obtain summary judgment against a "bad faith" claim based on appellants' "self-serving assertion" they had not received a copy of the new policy. The trial court agreed with appellee's position, holding appellee was entitled to summary judgment on the bad faith claim because appellees had "reason to believe" appellants had received the new policy excluding coverage prior to the loss. We disagree.

It is impossible to assess the reasonability of an insurer's decision unless there is evidence tending to show the reasonability of the insurer's actions under the circumstances, such as evidence regarding the nature of the investigation undertaken prior to denial of the insured's claim. *See Farr v. Transamerica Occidental Life Ins. Co.,* 145 Ariz. 1, 699 P.2d 376 (App. 1984). Absent evidence of compliance with the requisite standard of care, it cannot be said an insurer is entitled to summary judgment as a matter of law based solely on its subjective belief and assertion the insured's claim is "fairly debatable." *See generally, Rawlings v. Apodaca,* 151 Ariz. 149, 726 P.2d 565 (1986).

The record on appeal in this case is wholly devoid of any evidence tending to show appellee's denial of appellants' claim was reasonable under the circumstances. For example, the record contains nothing establishing that prior to its denial of appellants' claim Fireman's Fund attempted to determine whether the "policyholder message" or a copy of the policy itself had in fact been mailed to appellants by it or its agents. The record also contains no evidence regarding the reliability of the procedure used to mail notice to other insureds similarly situated to appellants, or even of the existence of such a procedure. Absent evidence in the record confirming appellee exercised due care in investigating appellants' claim or evidence of the reliability of

the procedures used to notify insureds of the policy changes, we cannot say as a matter of law appellee was unilaterally entitled to consider the claim fairly debatable and obtain a summary judgment on that basis.

## COUNT VII: FRAUDULENT ADVERTISING PRACTICES ACT

We turn next to whether the trial court properly granted summary judgment in favor of appellees on Count VII of appellants' complaint alleging a violation of Article 5, Fraudulent Advertising Practices Act, A.R.S. § 44–1481. That article provides in its entirety:

A. A person is guilty of a class 3 misdemeanor who:

1. Knowingly and with the intent to sell to the public real or personal property or services, or to induce the public to acquire an interest therein, makes and publishes an advertisement, either printed or by public outcry or proclamation, or otherwise, containing any false, fraudulent, deceptive or misleading representations in respect to such property or services, or the manner of its sale or distribution.

2. Publishes, circulates or disseminates any statement or assertion of fact concerning real estate which is known by him to be untrue, and which is made or disseminated with the intention of misleading.

B. A merchant is guilty of a class 3 misdemeanor who advertises or displays any brand of goods known to the general public and quotes prices in connection therewith as an inducement to attract purchasers to the place of business so advertised, and makes false statements regarding the quality or merits of the goods advertised.

The article itself does not contain any provision that can reasonably be construed as authorizing a private cause of action. Recent Arizona Supreme Court decisions interpreting other consumer protection statutes have discussed the existence of such statutory language before holding the legislature intended the enactments to serve as the basis for civil remedies.

For example, in holding the Consumer Fraud Act, A.R.S. § 44–1521 *et seq.*, creates a private cause of action for deceptive practices, our supreme court discussed the language of A.R.S. § 44–1533:

> Although the [Consumer Fraud] Act does not specifically provide for a right of action against persons violating the provisions of the article, we believe inferentially such right of action is granted by § 44–1533. It provides:
>
>> 'The provisions of this article shall not bar any claim against any person who has acquired any monies or property, real or personal, by means of any practice declared to be unlawful by the provisions of this article.'
>
> Clearly the section quoted contemplates that a person who has been damaged by the practices declared to be unlawful may exert a claim by reason of such acts. It has been held that similar language in a consumer fraud act is sufficient recognition that a cause of action has been created in favor of the consumer. *Rice v. Snarlin, Inc.*, 131 Ill.App.2d 434, 266 N.E.2d 183 (1970).

*Sellinger v. Freeway Mobile Home Sales, Inc.*, 110 Ariz. 573, 576, 521 P.2d 1119, 1122 (1974). More recently, the court discussed a similar statutory provision in holding the Arizona Insurance Code may be privately enforced:

> The considerations which lead us to conclude that a private cause of action exists under the Consumer Fraud Act are also present in the context of the Arizona Insurance Code. A.R.S. § 20–443 is found under Chapter 2, Article 6, which deals with unfair practices and frauds in the transaction of the insurance business....
>
> Subsection C provides:
>
>> 'No order of the director pursuant to this section or order of court to enforce it, or holding of a hearing, may in any manner relieve or absolve any person affected by the order or hear-

ing from any other liability, penalty or forfeiture under law.'

As in *Sellinger,* we believe that this section contemplates a private suit to impose civil liability irrespective of governmental action against the insurer. *See Royal Globe Insurance Co. v. Superior Court,* 23 Cal.3d 880, 153 Cal.Rptr. 842, 592 P.2d 329 (1979); *Greenberg v. Equitable Life Assurance Society,* 34 Cal.App.3d 994, 110 Cal.Rptr. 470 (1973); *Craver v. Union Fidelity Life Insurance Co., supra* [35 Ohio Misc. 15, 298 N.E.2d 265 (1973)].

*Sparks v. Republic Nat'l Life Ins. Co.,* 132 Ariz. 529, 541, 647 P.2d 1127, 1139 (1982).

*Sellinger* also found reinforcement for its holding that the Consumer Fraud Act creates a private cause of action in a number of United States Supreme Court decisions that did not appear to be dependent upon the existence of authorizing statutory language but rather reflected a purely judicial determination that providing a private cause of action is appropriate if it furthered the relevant statute's legislative goals.[4] However, in 1975 the United States Supreme Court decided *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). *Cort v. Ash* refused to imply a private cause of action in favor of a corporate stockholder for violations of a criminal statute prohibiting corporate political contributions. It distinguished the prior decisions relied upon in *Sellinger* on the basis that the statutes there involved at least inferred a civil cause of action "of some sort ... in favor of someone." 422 U.S. at 79, 95 S.Ct. at 2088, 45 L.Ed.2d at 37. It also defined several relevant factors to be considered, centering on Congressional intent to create a private right of action.

Finding no such intent, it held such a right was not available.

Later United States Supreme Court decisions in a variety of other contexts have also focused on Congressional intent as the "central inquiry." *See, e.g., Daily Income Fund, Inc. v. Fox,* 464 U.S. 523, 104 S.Ct. 831, 838–42, 78 L.Ed.2d 645 (1984); *California v. Sierra Club,* 451 U.S. 287, 292, 101 S.Ct. 1775, 1778, 68 L.Ed.2d 101 (1981); *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979); *Touche Ross & Co. v. Redington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979).

■ Given these more recent decisions, we must conclude that the "reinforcement" *Sellinger* found in the earlier decisions of the United States Supreme Court no longer exists. To the contrary, assuming the' Arizona Supreme Court would continue to look for guidance to United States Supreme Court decisions in this field, we believe the conclusion is now required that no private cause of action should be inferred based on a criminal statute where there is no indication whatsoever that the legislature intended to protect any special group by creating a private cause of action by a member of that group. As stated in *Touche Ross & Co., supra,* the question is not "whether this Court thinks that it can improve upon the statutory scheme that Congress enacted into law." 442 U.S. at 578, 99 S.Ct. at 2490. Instead, without any supporting indication of legislative intent, we must conclude no private right of action was intended. Under these circumstances, we conclude the trial court properly granted summary judgment on Count VII of appellants' complaint.

---

**4.** Cases cited by the *Sellinger* court include *Texas & Pac. Ry. Co. v. Rigsby,* 241 U.S. 33, 36 S.Ct. 482, 60 L.Ed. 874 (1916) (implying a private cause of action in favor of an employee under the Federal Safety Appliance acts); *J.I. Case Co. v. Borak,* 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964) (implying private cause of action in favor of stockholder for violations of Section 14 of the Securities Exchange Act of 1934 and SEC Rule 14a–9); *Wyandotte Transp. Co. v. United States,* 389 U.S. 191, 88 S.Ct. 379, 19 L.Ed.2d 407

(1967) (implying right of action in favor of United States Government to bring action for reimbursement for costs incurred in removing sunken barge pursuant to the Rivers and Harbors Act of 1899 where Act on its face only gave the Government the right to proceed criminally against the defendants and retain proceeds from sale of barge and cargo). *See also, Allen v. State Bd. of Elections,* 393 U.S. 544, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969) (implying private remedy for violations of the 1965 Voting Rights Act).

## COUNT IX: MISREPRESENTATION IN VIOLATION OF THE INSURANCE CODE

■ Count IX of appellants' complaint is based on Fireman's Fund alleged violation of A.R.S. § 20–443, prohibiting misrepresentation with respect to the sale of insurance coverage. That section provides in relevant part:

*Misrepresentations and false advertising of policies*

No person shall make, issue or circulate, or cause to be made, issued or circulated, any estimate, illustration, circular, sales material or statement:

1. Misrepresenting the terms of any policy issued or to be issued or the benefits or advantages promised or the dividends or share of the surplus to be received.

. . . .

4. Using any name or title of any policy or class of policies misrepresenting the true nature of such policy.

5. Making any misrepresentation to any policyholder for the purpose of inducing or tending to induce such policyholder to lapse, forfeit, surrender, retain or convert any insurance policy.

As previously noted, this section has been held to provide a basis for a private cause of action. *Sparks, supra,* 132 Ariz. 529, 541, 647 P.2d 1127, 1139.

Appellants' argument under the Insurance Code is also based on the allegedly misleading "Economy Plus" language contained in the policy declaration sheets. "Misrepresent" is nowhere defined in the Insurance Code provisions here involved. However, we believe it appropriate in interpreting this language to refer to the construction given this term under the Consumer Fraud Act, as both acts are intended to prevent deception of the public. *See, e.g.,* A.R.S. § 20–442 ("No person shall engage in this state in any trade practice which is ... an unfair or deceptive act or practice in the business of insurance").

In determining whether a representation is misleading or deceptive pursuant to the Consumer Fraud Act, this court has recently stated:

The Consumer Fraud Act is a broadly drafted remedial provision designed to eliminate unlawful practices in merchant-consumer transactions. [*People ex rel. Babbit*] *Green Acres Trust,* 127 Ariz. [160] at 164, 618 P.2d [1086] at 1090 [App.1980]. An unlawful practice is defined as follows:

The act, use, or employment by any person of any deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived, or damaged thereby ...

A.R.S. § 44–1522(A). The meaning of this definition becomes clearer when interpretations of 15 U.S.C.A. §§ 44, 52 and 55(a)(1), the Federal Trade Commission Act, are used as a guide, as A.R.S. § 44–1522(B) permits. The term 'deceptive' has been interpreted to include representations that have a 'tendency and capacity' to convey misleading impressions to consumers even though interpretations that would not be misleading also are possible. *Chrysler Corp v. FTC,* 561 F.2d 357, 363 (D.C.Cir.1977); *Goodman v. FTC,* 244 F.2d 584 (9th Cir.1957), *reaffirmed in Simeon Management Corp. v. FTC,* 579 F.2d 1137 (9th Cir.1978). The meaning and impression are to be taken from all that is reasonably implied, not just from what is said, *Spiegel, Inc. v. FTC,* 411 F.2d 481 (7th Cir.1969), and in evaluating the representations, the test is whether the least sophisticated reader would be misled. *Exposition Press, Inc. v. FTC,* 295 F.2d 869 (2d Cir.1961), *cert. denied* 370 U.S. 917, 82 S.Ct. 1554, 8 L.Ed.2d 497 (1962). Technical correctness of the representations is irrelevant if the capacity to mislead is found. *See Chrysler Corp. v. FTC, supra.* Additionally, a deceptive represen-

**218**

tation or practice may be found where earlier misrepresentations are corrected before the consumer agrees to a contract. *Exposition Press, supra.* *Madsen v. Western American Mortgage Co.,* 143 Ariz. 614, 618, 694 P.2d 1228, 1232 (App.1985).

Summary judgment is improper if there is a permissible inference that appellee's practices or correspondence "had the capacity to mislead an ordinary person." *Id.* Assuming for summary judgment purposes appellants received only the policy declaration sheets and not the accompanying "policyholder message" or a copy of the new policy itself, we cannot say as a matter of law the statements contained in the first line of the policy declaration sheet might not lead ordinary persons to believe their former policy had continued in effect.[5]

Since appellants have succeeded in obtaining reversal of summary judgment with respect to a majority of issues in an appeal involving a bad-faith claim, they are the prevailing parties and would thus be entitled to consideration for an award of attorneys' fees on appeal. *Sparks v. Republic National Life Ins. Co.,* 132 Ariz. 529, 647 P.2d 1127 (1982); *Wagenseller v. Scottsdale Memorial Hospital,* 147 Ariz. 370, 389, 710 P.2d 1025, 1044 (1985) (supplemental opinion). However, since appellants have not requested an award of attorneys' fees on appeal as required by ARCAP 21(c)(1), we are unable to authorize application for such an award as a part of our decision.

The trial court's order granting summary judgment on Counts I and IX is reversed and remanded for proceedings consistent with this opinion; the summary judgment on Count VII is affirmed.

CONTRERAS, P.J., and GRANT, J., concur.

<hr>

**5.** We note the body of each of the policy declaration sheets contains a summary of the coverages in effect. Policy declaration sheets received after the new policy was in force arguably might put an ordinary insured on notice both that certain coverages had changed and

NOTE: Paul G. Ulrich was authorized to participate in this case by the Chief Justice of the Arizona Supreme Court pursuant to Ariz. Const. Art. VI, § 3 and A.R.S. §§ 12–145–47.

that they did not extend to the loss in question. However, we think interpretation of the declarations as a whole present conflicting inferences for the trier of fact, thus making summary judgment improper. *Mast v. Standard Oil Co. of California,* 140 Ariz. 1, 680 P.2d 137 (1984).