770 P.2d 346

**Alfred A. COLBERG and Mildred K. Colberg, husband and wife, Plaintiffs–Appellants,**

**v.**

**Orlo RELLINGER and Judi Rellinger, husband and wife, Defendants–Appellees.**

**No. 1 CA–CIV 8857.**

Court of Appeals of Arizona, Division 1, Department C.

July 14, 1988.

Supplemental Opinion Dec. 13, 1988.

Reconsideration Denied Jan. 27, 1989.

Review Denied April 4, 1989.

Favour, Weaver, Moore & Schuyler by John B. Schuyler, Jr., Prescott, for plaintiffs-appellants.

Toci, Murphy & Beck by Thelton D. Beck, Prescott, for defendants-appellees.

## OPINION

SHELLEY, Presiding Judge.

This is an action for damages for faulty construction of a residence. Alfred and Mildred Colberg (Colberg) filed a complaint alleging breach of contract against Rellinger Construction Co., Inc. (Company) and negligence and breach of implied warranty against Orlo and Judy Rellinger (Rellinger). The trial court awarded judgment for Colberg against the company in the sum of $17,390.18 but denied recovery against the individual defendants (Rellinger). The trial court ordered recovery of attorney's fees by Colberg against Company in the amount of $15,390 and by Rellinger against Colberg in the amount of $11,862.00 pursuant to A.R.S. § 12–341.01(A). Colberg filed this appeal. In this appeal, we conclude that a homeowner does not have a negligence claim against a contractor for structural defects in the home. We also conclude that a homeowner has no claim for negligent supervision against the contractor's qualifying party, under A.R.S. § 32–1127. Finally, we conclude that these two claims do not arise out of a contract

within the meaning of A.R.S. § 12–341.01(A).

## TRIAL COURT ACTION

Albert and Mildred Colberg contracted with the Company for the construction of their house. The contract provided that all work would be done in a workmanlike manner. The Company was licensed under Arizona contractors law. Orlo Rellinger was president of and qualifying party for the Company.

Colberg sued the Company and Rellinger seeking damages for structural defects in their house. He claimed both breach of contract and negligence. Colberg argued that Rellinger was personally liable on three bases:

(1) Rellinger personally guaranteed the construction of Colberg's house;

(2) Rellinger, as an officer in control of the Company, was personally liable for the Company's tortious activities; and

(3) Rellinger, as qualifying party for the Company, was liable for his inadequate supervision of the work performed by the Company, pursuant to A.R.S. § 32–1127.

The trial court awarded Colberg damages against the Company on the contract claim. However, it held that Rellinger was not liable on the negligence claims, finding that Rellinger did not personally guarantee the work and concluding that Colberg had no negligence claim for structural defects in their house. In its minute entry of September 23, 1985, the trial court found the following:

Plaintiffs [Colberg] seek recovery not only against the Defendant contracting company, which is a corporation, but also against Defendant Orlo Rellinger personally. Defendant construction company concedes it is liable for any recovery the Court allows. However, Defendant Orlo Rellinger asserts that he cannot be personally liable for any amounts adjudged due. Plaintiffs admit they are not attempting to pierce the corporate veil in order to impose liability on Orlo Rellinger personally but rely instead on a theory of independent negligence and a theory of breach of express warranty.

Addressing the latter theory first, Plaintiffs assert that Orlo Rellinger guaranteed to them that he would personally supervise the construction of the residence in order that it would be constructed in a workmanlike fashion and without defects. Defendant Rellinger denies that he ever made such a guarantee. The Court finds as a fact that such a guarantee was never made and, therefore, Plaintiffs' claim against Orlo Rellinger fails on this theory.

Turning now to the negligence theory, it is first important to note that the damages sought in this case are entirely restricted to remedying the structural defects in the house. There is no claim for money damages resulting from personal injuries or damage to property other than the structure itself caused by the defects in the structure. In reaching its conclusion herein, this Court has assumed, without deciding, that Orlo Rellinger was negligent in his supervision of the construction of the residence and that his negligence caused some of the defects for which recovery has been permitted.

Given the factual setting of this case and the claim which is made, it is apparent that Plaintiffs cannot recover in negligence. *Woodward v. Chirco Const. Co., Inc.,* 141 Ariz. 514 [687 P.2d 1269] (1984) and *Nastri v. Wood Bros. Homes, Inc.,* 142 Ariz. 439 [690 P.2d 158] (1984) teach that an action in negligence is not available in this context when the damages claimed are limited to remedying structural defects. Plaintiff contends, however, that even though the Defendant construction company, which was the builder-vendor in this case, cannot be liable in negligence, that Mr. Rellinger should nonetheless be held guilty of negligence for violation of a statutory duty imposed on him by virtue of the contractor licensing statutes. A.R.S. Section 32–1127.

It is not cleare [sic] to this Court how the contractor's licensing statute can operate to create liability in negligence in

this case. Assume for purposes of discussion no corporate Defendant existed herein and Orlo Rellinger personally was the builder-vendor in this case. Both *Woodward* and *Nastri* would preclude recovery based on negligence. That being so, it would be anomalous to impose liability based on negligence when there is a corporate person interposed as builder-vendor between Plaintiffs and Mr. Rellinger.

The Court recognizes the result reached in *McFeeters v. Renollet* [210 Kan. 158], 500 P.2d 47 (Kan.1972). Although it is not precisely clear in the reported opinion in *McFeeters*, it does appear that the damages claimed were limited to remedying structural defects in the basements of the subject houses. The Kansas Supreme Court did permit the Plaintiffs in this case to recover damages both in contract and negligence from the Defendant corporation and personally from its president. While *Woodward* did cite *McFeeters* with approval, the actual holding in *Woodward* does not support adopting the *McFeeters* rule. *Woodward* clearly distinguished between an action to recover solely for remedying structural defects, which must be in contract, and an action for damage to other property or personal injury caused by the defects, which is an action in tort. Therefore, Plaintiffs reliance on *McFeeters* is misplaced.

## ISSUES

Colberg presents the following three issues on appeal:

(1) Whether the trial court erred in concluding that Colberg had no negligence claim against Rellinger for structural defects in their house;

(2) Whether Rellinger was liable as qualifying party for inadequate supervision, under A.R.S. § 32–1127; and

(3) Whether Colberg's tort claims arose out of a contract under A.R.S. § 12–341.01(A).

## LEGAL DISCUSSION

### Preclusion

Rellinger argues that Colberg is precluded from appealing these three issues. In his motion to dismiss this appeal, Rellinger argued that Colberg, by collecting his judgment against the Company from the contractors' recovery fund, waived his right for any review of the judgment. *See Rosen v. Rae*, 132 Ariz. 509, 511, 647 P.2d 640, 642 (App.1982). In his motion, Rellinger also argued that Colberg did not raise the attorneys' fees issue in the trial court. In response to Rellinger's motion to dismiss, this court concluded that Colberg was not precluded from seeking appellate review and that the attorneys' fees issue was appropriately briefed. Rellinger requests that we reconsider our order. We decline to do so.

### Tort Recovery

The trial court held that Colberg had no negligence claim for structural defects in their house. Division 2 of the Arizona Court of Appeals has addressed this issue:

> We agree with the appellee [contractor] that the judgment dismissing the negligence count should be affirmed. The damage claimed in this case involves the structure itself. There is no claim for damage to personal property or personal injury. In *Woodward v. Chirco, supra,* our supreme court held that the purchaser of a home could sue in both contract and tort for injuries sustained due to the builder's failure to construct the house in a workmanlike manner. However, the court explained that the available action in contract was for "defects in the structure itself as such defects render the home less than the purchaser bargained for," whereas the available tort claim was for "damage to personal property or personal injury" caused by the defective construction.

A case directly in point is *Crowder v. Vandendeale,* 564 S.W.2d 879 (Mo.1978). In that opinion the court recognized an implied warranty of habitability in a new home. However, the court concluded

that recovery for property damage caused by latent structural defects was not actionable in negligence. The court reasoned:

> A duty to use ordinary care and skill is not imposed in the abstract. It results from a conclusion that an interest entitled to protection will be damaged if such care is not exercised. Traditionally, interests which have been deemed entitled to protection in negligence have been related to *safety* or freedom from physical harm. Thus, where personal injury is threatened, a duty in negligence has been readily found. Property interests also have generally been found to merit protection from physical harm. However, where mere deterioration or loss of bargain is claimed, the concern is with a failure to meet some standard of *quality*. This standard of quality must be defined by reference to that which the parties have agreed upon.

564 S.W.2d at 882. (emphasis in original).

And in *Redarowicz v. Ohlendorf, supra,* [92 Ill.2d 171, 65 Ill.Dec. 411, 441 N.E.2d 324 (1982)], the Illinois Supreme Court held that the subsequent purchaser of a home could not recover for the resulting economic loss in tort, that to recover in negligence there must be a showing of harm beyond disappointed expectations and loss of the benefit of the bargain in the purchase of a new home.

*Nastri v. Wood Bros. Homes, Inc.,* 142 Ariz. 439, 444–45, 690 P.2d 158, 163–64 (App.1984). Division 2 based its decision on the Arizona Supreme Court's decision in *Woodward v. Chirco Constr. Co.,* 141 Ariz. 514, 687 P.2d 1269 (1984).

In *Woodward* the court did not directly address whether Woodward had a negligence claim for structural defects in his house. Woodward claimed that the builder breached the implied warranty of workmanlike performance and habitability and also claimed damages for negligence by the builder. The trial court dismissed the negligence claim due to Woodward's failure to present expert testimony regarding the standard of care in the community. *Wood-*

*ward,* 141 Ariz. at 515, 687 P.2d at 1270. The court of appeals affirmed the dismissal of the negligence claim but reversed the dismissal of the breach of implied warranty of workmanlike performance and habitability claim. The supreme court accepted review in *Woodward* to determine only whether this implied warranty claim arises out of contract or whether it is a tort. The *Woodward* court held that the six-year statute of limitations for contracts, not the two-year statute of limitations for torts, applied to Woodward's claim. *Id.* at 516, 687 P.2d at 1271. The *Woodward* court observed that it agreed:

> with those jurisdictions that have held that injury incurred due to negligent construction of a residence may give rise to an action for breach of the implied warranty of workmanlike performance and habitability and an action for breach of the contractor's common law duty of care. *Cosmopolitan Homes, Inc. v. Weller,* 663 P.2d 1041 (Colo.1983); *Cline v. Sawyer,* 600 P.2d 725 (Wyo.1979), appeal after remand, 618 P.2d 144 (1980); *Tavares v. Horstman,* 542 P.2d 1275 (Wyo.1975). *See McFeeters v. Renollet,* 210 Kan. 158, 500 P.2d 47 (1972); *Gilley v. Farmer,* 207 Kan. 536, 485 P.2d 1284 (1971); *Ferguson v. Town Pump, Inc.,* 177 Mont. 122, 580 P.2d 915 (1978). We believe this view fosters the policy considerations behind recognition of the warranty as discussed in *Columbia Western Corp. v. Vela,* 122 Ariz. 28, 592 P.2d 1294 (App.1979)....

*Id.* at 515–16, 687 P.2d at 1270–71. The court further observed that a purchaser could seek recovery in contract for structural defects and in tort for injuries caused by the defects:

> We see no reason to preclude a purchaser from claiming damages in contract and in tort. The purchaser of a home can seek to recover in contract for defects in the structure itself as such defects render the home less than the purchaser bargained for. *See Duncan v. Schuster–Graham Homes, Inc.,* 194 Colo. 441, 446, 578 P.2d 637, 640 (1978) ("[W]here the plaintiff seeks only to re-

ceive what the builder promised to deliver, or damages to compensate him for [structural] deficiencies in the final product, [the action] arises from the contract of sale between the parties and is basically contractual in nature."). *The purchaser can also seek to recover in tort for injuries sustained due to the contractor's failure to construct the home as a reasonable contractor would. For example, if a fireplace collapses, the purchaser can sue in contract for the cost of remedying the structural defects and sue in tort for damage to personal property or personal injury caused by the collapse. Each claim will stand or fail on its own; a distinct statute of limitation applies to each.* (Emphasis added)

*Id.* at 516, 687 P.2d at 1271.

We agree with the *Nastri* court's interpretation of *Woodward*.

The case of *Donnelly Construction Co. v. Oberg/Hunt/Gilleland*, 139 Ariz. 184, 677 P.2d 1292 (1984), is inapposite. In *Donnelly*, the architects had prepared site plans, engineering site specifications and other site improvements to the Page School District complex. The specifications were for use by bidders for the school district contract. Donnelly relied on the plans and specifications and information contained in the site plan to prepare its bid. On starting work, Donnelly found the plans and specifications to be in substantial error which resulted in increased costs of construction to Donnelly. After substantially completing the contract, Donnelly sued the school district and the architects for its increased costs. The architects moved to dismiss, positing that absent privity of contract, they owed no duty and could not be liable to the contractor. The court held: "There is no requirement of privity in this state to maintain an action in tort." *Donnelly*, 139 Ariz. at 187, 677 P.2d at 1295. *Donnelly* did not involve a claim of negligent construction nor a claim of implied warranty of workmanlike performance and habitability. That issue was not relevant since there were no structural defects to remedy.

In *Restatement (Second) of Torts* (1979), we read:

§ 906. Compensatory Damages for Pecuniary Harm

Compensatory damages that will not be awarded without proof of pecuniary loss include compensation for

(a) Harm to property.

Comment b to § 906 reads: *"Harm to property.* Harm to property includes the destruction, physical impairment or wrongful taking of any thing that is the subject of ownership." Section 906 contemplates damage to property already in existence rather than damages for structural defects incurred during construction.

Colberg has not alleged any damage to property already in existence, nor has he alleged any personal injuries. His claim is based solely on structural defects occurring during construction of their house. He does not have a negligence claim for structural defects during construction.

*Rellingers' Liability as Qualifying Party*

 Colberg argues he has a claim against Rellinger, as qualifying party for the Company, for his failure to adequately supervise the work performed by the Company. He argues that this duty to supervise arises from A.R.S. § 32–1127, which provides a qualifying party "shall not take other employment that would conflict ... with his ability to adequately supervise the work performed by the licensee." He argues that his claim would further the legislative intent of Arizona contractors law, which is to protect the public.

In essence, Colberg is arguing that A.R.S. § 32–1127 creates a private claim against the qualifying party. We reject this argument because Colberg cites no language in Arizona contractors law to indicate that the legislature contemplated such private claim. The Arizona Supreme Court has determined that the Consumer Fraud Act creates a private claim, because A.R.S. § 44–1533 provides that the Act shall not bar any claim against a person employing an illegal practice under the Act. *Sellinger v. Freeway Mobile Home Sales, Inc.*, 110 Ariz. 573, 576, 521 P.2d 1119, 1122

(1974). Similarly, the court determined that the Arizona Insurance Code created a private claim, because A.R.S. § 20–456(C) provides that the Director of Insurance may not relieve a person from any other liability under law. *Sparks v. Republic Nat'l Life Ins. Co.*, 132 Ariz. 529, 541, 647 P.2d 1127, 1139 (1982). In contrast, this court determined that the Fraudulent Advertising Practices Act did not create a private claim, because no statutory language supported that inference. *Ward v. Fireman's Fund Ins. Companies*, 152 Ariz. 211, 216, 731 P.2d 106, 111 (App. 1987). We note, for example, that Arizona contractors law may contemplate a private claim against contractors, because A.R.S. § 32–1132 provides that when a person recovers a judgment against a contractor for conduct in violation of Arizona contractors law, the person may recover from the contractors' recovery fund. However, we find no supporting indication of legislative intent regarding A.R.S. § 32–1127. Therefore, we must conclude that the legislature intended no private right of action against qualifying parties.

*Trial Court's Award of Attorneys' Fees*

In the trial court, Colberg asserted contract and negligence claims against Rellinger. On appeal, Colberg argues that the trial court erred in its attorneys' fees award to Rellinger, because the bulk of Rellinger's attorneys' fees were incurred in defense of the negligence claims, not the contract claim and are therefore not recoverable.

Rellinger responds that Colberg failed to raise this issue in the trial court. Rellinger contends that Colberg should have objected when the fees were not apportioned between the contract and tort claims.

In his response to Rellinger's application for attorneys' fees, Colberg generally argued that his negligence claims did not arise out of a contract, therefore he did not specifically request apportionment in the trial court. Rellinger, however, argued that Colberg's negligence claims arose out of a contract under A.R.S. § 12–341.01(A). Agreeing with Rellinger, the trial court

awarded attorney's fees "pursuant to A.R.S. § 12–341.01(A)."

The supreme court dealt with this problem in *Barmat v. Doe*, 155 Ariz. 519, 747 P.2d 1218 (1987). The court held that with regard to contracts arising from relationships between professionals and their clients and from other special relationships, the law imposes special duties to all within the foreseeable range of harm as a matter of public policy regardless of whether or not there is a contract. Breaches of those duties are generally recognized as torts and the nature of actions to recover for such breaches arise out of tort. Therefore, A.R.S. § 12–341.01(A) is not applicable to such actions. As between Colberg and the Company, the action arises out of contract and A.R.S. § 12–341.01(A) applies; as between Colberg and Rellinger the action arises out of a tort claim and A.R.S. § 12–341.01(A) does not apply.

We conclude that Colberg's negligence claim did not arise out of contract within the meaning of A.R.S. § 12–341.01. The mere fact that the contract existed somewhere in the allegedly tortious transaction does not mean that the contract was a factor in causing the dispute. The fact that Rellinger was not a party to Colberg's contract reinforces our conclusion.

We also hold that Colberg's negligent supervision claim did not arise out of a contract. This claim was based on Arizona contractors law, separate from the Company's contractual duties.

We conclude that the trial court must have considered all of Colberg's claims to arise out of a contract, because it awarded the full amount requested by Rellinger. We reverse the trial court's award of attorneys' fees.

CONCLUSION

We deny Rellinger's request for attorneys' fees on appeal under A.R.S. § 12–341.01(A).

We affirm the trial court's judgment that Colberg had no negligence claim against Rellinger. We affirm the trial court's judgment that Colberg had no claim

against Rellinger as the qualifying party under the contractor's license. We reverse its award of attorneys' fees to Rellinger.

KLEINSCHMIDT, J., concurs.

GRANT, Judge, concurring in part, dissenting in part.

I concur in the majority opinion except as to the tort claim by Colberg against Rellinger. I would decline to adopt the *Nastri* court's interpretation of *Woodward v. Chirco.* In his answering brief Rellinger concedes that he could have been found negligent in his supervision of the construction as to some structural defects. I believe *Donnelly Const. Co. v. Oberg/Hunt/Gilleland* is instructive here. The *Donnelly* court held that an action in negligence may be maintained upon the plaintiffs showing that the defendants owed a duty to him, that the duty was breached, and that the breach proximately caused an injury that resulted in damages. In *Donnelly* the injury was purely economic. The *Donnelly* court went on to say that: "[d]esign professionals have a duty to use ordinary skill, care, and diligence in rendering their professional services." *Id.* 139 Ariz. at 187, 667 P.2d at 1295. The duty extends to those with whom the design professional is in privity as well as to those with whom he is not. *Id.* I believe this applies to Rellinger who, like a design professional, had a duty to use ordinary skill, care and diligence in rendering professional service to Colbert. *Cosmopolitan Homes, Inc. v. Weller,* 663 P.2d 1041 (Colo.1983). This position is also supported by *Richards v. Powercraft Homes, Inc.,* 139 Ariz. 242, 678 P.2d 427 (1984) in which the supreme court held that implied warranty of habitability and workmanlike performance "is imposed by law." *Id.* at 244, 678 P.2d at 429; *see Simmons v. Owens,* 363 So.2d 142 (Fla.App.1978). The *Restatement (Second) of Torts* § 906 comment b (1979), which states that compensatory damages may include compensation for harm to property, also includes physical impairment of anything that is the subject of ownership. In the absence of authority to the contrary Arizona looks to the *Restatement (Second) of Torts. Fendler v. Phoenix Newspapers,* 130 Ariz. 475, 636 P.2d 1257 (App.1981). I would reverse and remand for trial on the negligence count against Rellinger individually.

SUPPLEMENTAL OPINION

SHELLEY, Presiding Judge.

Alfred and Mildred Colberg (Colbergs) filed a complaint alleging breach of contract against Rellinger Construction Company, Inc. (Company), and breach of contract and negligence against Orlo and Judi Rellinger (Rellingers) with respect to a residential construction contract. The trial court awarded judgment for Colbergs against the Company and denied recovery against Rellingers. The trial court awarded attorney fees to Colbergs against the Company and awarded Rellingers attorney fees against Colbergs in the amount of $11,862.00, pursuant to A.R.S. § 12–341.01(A), which states: "In any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees." Colbergs appealed the judgment in favor of Rellingers.

This court, in an opinion filed July 14, 1988, affirmed the judgment of the trial court on all issues except the award of attorney fees to Rellingers. We reversed the trial court's order granting attorney fees, and said:

> The supreme court dealt with this problem in *Barmat v. Doe,* 155 Ariz. 519, 747 P.2d 1218 (1987). The court held that with regard to contracts arising from relationships between professionals and their clients and from other special relationships, the law imposes special duties to all within the foreseeable range of harm as a matter of public policy regardless of whether or not there is a contract. Breaches of those duties are generally recognized as torts and the nature of actions to recover for such breaches arise out of tort. Therefore, A.R.S. § 12–341.01(A) is not applicable to such actions. As between Colberg and the Company, the action arises out of contract and A.R.S. § 12–341.01(A) ap-

plies; as between Colberg and Rellinger the action arises out of a tort claim and A.R.S. § 12–341.01(A) does not apply.

We conclude that Colberg's negligence claim did not arise out of contract within the meaning of A.R.S. § 12–341.01. The mere fact that the contract existed somewhere in the allegedly tortious transaction does not mean that the contract was a factor in causing the dispute. The fact that Rellinger was not a party to Colberg's contract reinforces our conclusion.

We also hold that Colberg's negligent supervision claim did not arise out of a contract. This claim was based on Arizona contractors law, separate from the Company's contractual duties.

Appellees filed a motion for reconsideration, asserting that *Barmat* did not change the law as set forth in *Shirley v. Hartford Accident & Indemnity Company*, 125 Ariz. 70, 607 P.2d 389, 390 (1979), and *Lacer v. Navajo County*, 141 Ariz. 392, 687 P.2d 400 (App.1984), and that the law set forth in *Shirley* and *Lacer* is germane to the attorney fee issue. We agree. In *Lacer,* we read:

> A party is entitled to an award of its attorney's fees under A.R.S. § 12–341.01 if judgment in its favor is based upon the absence of the contract sued upon by the adverse party.

*Lacer,* 141 Ariz. at 394, 687 P.2d at 402. The *Shirley* case is to the same effect.

Colbergs posit that *Barmat* is controlling under the facts of this case because they did not pursue a contract theory as to Rellingers. They assert that their lawsuit was based solely on a duty imposed by law, to-wit: the statutory duty of Rellinger to supervise the construction as qualifying agent for the construction company in obtaining its license and a duty under common law negligent supervision. They rely upon *Lewin v. Miller Wagner & Co., Ltd.,* 151 Ariz. 29, 725 P.2d 736 (App.1986), and on *Barmat v. John and Jane Doe Partners,* 155 Ariz. 519, 747 P.2d 1218 (1987). In *Barmat* the court stated:

> We note that the court of appeals has reached a similar result in *Lewin, supra.* The rationale there, as we read the opin-

ion, is that *where the implied contract does no more than place the parties in a relationship in which the law then imposes certain duties recognized by public policy, the gravamen of the subsequent action for breach is tort, not contract.* We approve that view.

. . . .

> *Where, however, the duty breached is not imposed by law, but is a duty created by the contractual relationship, and would not exist "but for" the contract, then breach of either express covenants or those necessarily implied from them sounds in contract. Sparks, supra; Lewin, supra. The essence of such actions arises "out of a contract," eligible for an award of fees under the statute.* (Emphasis added; citations omitted.)

*Barmat,* 155 Ariz. at 523, 747 P.2d at 1222.

Colbergs' negligent supervision theories sound in tort with duties imposed by law. *Barmat* holds that the gravamen of an action for breach of duty imposed by law is tort and not contract. If all of Colbergs' claims sounded solely in tort, attorney fees would be precluded. Such is not the case. The claim of express warranty was one of the factors in dispute in this case.

The complaint alleged that "Rellinger and Rellinger Construction entered into a written contract ... with Colbergs...." In the pretrial statement, Colbergs stated as an issue that Rellinger *contracted* or otherwise held himself out to supervise and control the construction of Colbergs' residence. This contract issue was thereafter abandoned. The pretrial statement set forth the theories of express warranty and negligence against Rellingers. Colbergs' opening post-trial memorandum set forth two theories of liability against Rellingers: (a) negligence; and (b) breach of express warranty.

The opening post-trial memorandum also stated:

> Rellingers are personally liable to Colbergs under two theories. First, Orlo failed to exercise reasonable care as qualifying party of Rellinger, Inc., in supervising the construction of Colbergs'

residence. Second, Orlo personally warranted to Colbergs that their residence would be constructed to their satisfaction in a workmanlike manner. Rellingers are personally liable to Colbergs under both theories.

The trial court found that an express warranty had not been made by Rellinger. The duty in express warranty is contractual and not one imposed by law. The claim of breach of express warranty sounds in contract. As stated in *Barmat:* "The essence of such actions arises 'out of a contract,' eligible for an award of fees under the statute." *Barmat,* 155 Ariz. at 523, 747 P.2d at 1222.

■ Under the *Shirley* and *Lacer* cases, when a contract is alleged by a plaintiff and the defendant successfully proves that there was no contract, the action is still one arising out of contract under A.R.S. § 12–341.01, entitling the defendant to attorney fees. We are therefore of the opinion that we erred in holding that the action arose solely out of a tort claim and that A.R.S. § 12–341.01(A), which allows attorney fees to a successful party in a claim arising out of contract, did not apply.

The motion for reconsideration is granted. That portion of the original opinion filed July 14, 1988, dealing with the attorney fee issue, is hereby vacated.

■ Colbergs assert that if part of the action consisted of a claim arising out of contract, attorney fees must be apportioned between the contract and tort claims, inasmuch as attorney fees are only allowed for claims arising out of contract.

Rellingers assert that Colbergs failed to raise the apportionment issue in the trial court, therefore it may not be considered on appeal. Rellingers asserted in the trial court that the entire action arose out of contract and that they were entitled to attorney fees.

■ In Colbergs' response to the motion for reconsideration, they state: "... Colbergs strongly urged the trial court that no attorneys' fees should be awarded to Rellingers because the claims against them sounded *solely* in tort rather than in contract.... Colbergs' argument that no fees should be awarded obviously encompassed the argument that the fees should be apportioned if the trial court found that the 'warranty' claim sounded in contract." We disagree. Apportionment was never mentioned. The issue of apportionment should have been set forth as an alternative argument.

In the case of *Dillig v. Fisher,* 142 Ariz. 47, 51, 688 P.2d 693, 697 (App.1984), Division 2 stated:

Finally, appellants argue that the attorney's fees awarded by the court exceeded the limitation in A.R.S. § 12–341.01(B) of *"the amount paid or agreed to be paid,"* and alternatively were unreasonable as being far in excess of the amount of actual damages recovered. *While appellants' first point has merit, in that Dillig introduced no evidence as to his fee agreement with counsel, appellants did not raise this argument before the trial court and therefore cannot raise it for the first time on appeal.* (Emphasis added.)

In the case of *Aero Energy, Inc. v. Circle C Drilling Company,* 699 S.W.2d 821, 823 (1985), the court stated:

Petitioners also complain of the trial court's award of attorney's fees to Circle C. They argue that there was no evidence to warrant submission of this question to the jury. Circle C pleaded causes of action for breach of the drilling contract and for fraudulent inducement of its leasing contract with Manufacturer's Hanover Leasing Corporation. *Aero, Inc. and Aero, Ltd. did not object to the broad issue submitted to the jury, which allowed consideration of attorney fees for both causes. Because they did not object to the failure of the trial court to segregate the attorney's fees between the claims, they have waived that point.* (Emphasis added.)

The issue of apportionment was not raised in the trial court. Therefore, it may not be raised on appeal.

Rellingers request attorney fees on appeal. In the exercise of our discretion, we decline to award attorney fees on appeal.

**52**

The judgment of the trial court awarding attorney fees to Rellingers is affirmed.

GRANT, C.J., and KLEINSCHMIDT, J., concur.