In the Matter of CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Petitioner, against JOHN M. MURTAGH, Individually and as Chief Magistrate of the Magistrates' Court of the City of New York, et al., Respondent.

Supreme Court, Special Term, Bronx County, November 29, 1951.

*Colley E. Williams* and *Sidney L. Davis* for petitioner.

*Denis M. Hurley, Corporation Counsel (Arthur J. Goldsmith* and *George J. Elkins* of counsel), for respondents.

HAMMER, J. The petitioner moves for an order pursuant to article 78 of the Civil Practice Act in the nature of prohibition, restraining further proceedings in the Municipal Term of the Magistrate's Court, Borough of The Bronx, on a summons and an affidavit of complaint or information charging the petitioner with a violation of section D26–1.0 of chapter 26 of the Administrative Code of the City of New York.

The information upon which the summons was issued was made and filed by the respondent, David Lehman, an inspector in the department of housing and buildings, of which the smoke control bureau is a part, and charges in substance that at 3:57 P.M. on August 24, 1951, " and at divers times prior thereto " the petitioner caused or allowed dense smoke to be discharged from the smoke stacks of its Hell Gate Generating Station.

The grounds urged for the relief sought by the petitioner are that the smoke control board is constituted as a regulatory tribunal with quasi-judicial powers, and is vested with exclusive primary jurisdiction to hear and determine alleged violations of section D26–1.0 of chapter 26 of the Administrative Code and of the regulations established by that board pursuant to the mandate of the code; that the issuance of the summons by the Magistrate upon the information of an inspector of the department of housing and buildings was beyond the jurisdiction of the Magistrate's Court and in contravention of the provisions of the code and of the mandatory procedures which govern the board's regulatory exercise of its functions.

By 1949, air pollution due to the emission of smoke and soot in the city of New York had become a menace to health and property of the public. Medical men reported smoke and soot emissions contributed to ailments of the respiratory system. Damage to clothing and fabrics was a matter of common complaint. Public welfare agencies and public officials had become aroused to the necessity of seeking remedial action more effective than prosecution in the criminal courts for violation of

existing provisions of law. Petitioner does not question but rather agrees with this. The prohibitions of emissions from chimneys of smoke, fly ash and other products of fuel combustion were contained in sections 211 and 212 of the Sanitary Code of the City of New York. Violations were classified as misdemeanors and were triable either in the Magistrates' Courts or in the Courts of Special Sessions. Local Law, 1949, No. 5 of the City of New York, which was an amendment of the Administrative Code of the City of New York, enacted in 1949, resulted from such civil agitation and the public hearings conducted by the committee on general welfare of the city council. This committee in its report recommended the enactment of the proposed local legislation. As noted, this became Local Law No. 5. Chapter 26 of the Administrative Code was thereby amended by adding a new title " D ". Subdivision a of section D26–1.0 thereof sets forth the declaration of the policy of the people of the city of New York in respect of the evil and remedy. Among other things, that section states: " For the purpose of controlling and reducing atmospheric pollution, it is hereby declared to be the policy of the city to establish and maintain active and continuing supervision of combustion processes, and of the emission of certain harmful or objectionable elements into the atmosphere."

Although the gravity of the situation arising from air pollution due to the emissions of smoke and soot was such that it brought about the enactment of the new remedial legislation and regulation, it must be noted that while violation of the Sanitary Code was a misdemeanor punishable as such, violation under the Administrative Code is merely an " offense ". (§ D26–1.0, subd. k; *People ex rel. Gross* v. *Adams*, 270 App. Div. 607, affd. 296 N. Y. 604.)

Subdivision a of section D26–1.0 provides that: " Nothing herein contained shall be construed to abridge the emergency powers of the board of health of the department of health or the right of the department of health to engage in any of its necessary or proper activities." Thought is nevertheless provoked as to the reason for such practical slowing down or diminution of recourse to the misdemeanor provisions of the Sanitary Code with clear right of prosecution in the courts of criminal jurisdiction if the intent of the new law was not to have resort, if not exclusively at least primarily, to the newly established bureau of smoke control. In this respect the report of the committee on general welfare, in which the reasons for the new remedial legislation were given, states:

" This local law seeks to regulate and correct conditions now existing in the City of New York which have caused the pollution of air in and over the City of New York.

" The department of Health has been charged with the enforcement of the present laws dealing with smoke and soot, but in the 75 years [of enforcement] by the Health Department, the condition has gradually deteriorated until the condition of air pollution has now become a menace to health and property ". This seems to indicate that regulation, correction and prevention were expected to be obtained more efficiently under the new law and its procedure.

The real issue is whether the Magistrate's Court has jurisdiction of the parties and subject matter, and power to entertain the complaint, issue the summons and to hear the evidence and determine the innocence or guilt of the party charged with the offense.

If the Magistrate's Court has jurisdiction of the parties and subject matter, this court in an article 78 (Civ. Prac. Act) proceeding may not permit a test before it of the sufficiency of the complaint. Respondents contend petitioner is making such an attempt and is not attacking the jurisdiction or power of the Magistrate's Court. Petitioner, to the contrary, asserts it raises only a jurisdictional question.

As noted above, the charge which petitioner was required to answer was that on August 24, 1951, in the borough of The Bronx, it " did unlawfully at about 3:57 P.M. and at divers times prior thereto at East 134th Street and Locust Avenue, Bronx, cause, suffer and allow dense smoke to be discharged from the smoke stacks " etc., in violation of section D26–1.0 of chapter 26. The corporation counsel's bill of particulars enumerates the emission of dense smoke from named stacks on dates from August 13, 1951, to and including August 24, 1951.

The petitioner received no notice from the bureau of smoke control of the violation on August 24, 1951, or for the discharges of smoke specified in the bill of particulars, unless notice of a discharge of smoke on July 18, 1951, can be said to be such notice. The answer of the respondents alleged that on July 18, 1951, an order was issued by the director of the bureau and served upon the petitioner charging that dense smoke was emitted on that date; that the petitioner did not abate the violation alleged and that the petitioner had not appealed from the order of July 18, 1951. In this connection rule or regulation 1.4.1 of the bureau of smoke control of the city of New York must be borne in mind. It provides: " 1.4 *Excess Emission.*

1.4.1 When any emission in violation of any of these rules and regulations is found by the director, he shall order the offending owner or operator to abate the violation, provided, however, that on receipt by the director of a stipulation by the owner or operator that he will immediately undertake adjustments, additions, or alterations to equipment which are expected to be effective in abating the violation, the director may stay the effective date of such order by not more than sixty (60) days.''

While the sufficiency of the notice served in respect of an alleged offense on July 18, 1951, will be briefly considered, it seems clear that if without such a notice resort may be had to the Magistrate's Court in the manner outlined in respect of the alleged offense of August 24, 1951, the additional charges may be disregarded as surplusage.

Respondents contend the paper, made and served July 18, 1951, was an order to abate petitioner's unlawful emission of smoke no matter when occurring thereafter. Petitioner asserts the alleged violation of July 18, 1951, was a mere temporary condition due to an accidental defect immediately remedied, on discovery of which a full explanation in writing was furnished to the bureau of smoke control, and as petitioner was not required to attend before the board to give further answer, it could be and was assumed that the charge or complaint was dropped or dismissed. This letter of petitioner of July 25, 1951, to the bureau of smoke control, coming as obviously it did from such a responsible alleged '' offending owner or proprietor '' (rules 1.4), may be regarded only as an answer by petitioner that the violation charged, which it was ordered to abate, was abated. The letter stated in effect the emission charged was due to an emergency shutdown of one of the coal mills of No. 11 boiler due to mill motor trouble which upon repair or adjustment was returned to service on July 19, 1951. As the bureau of smoke control did not take any action requiring petitioner to appear before the board in respect of the order, it must be assumed that the bureau accepted the action stated by petitioner to have been taken as the abatement required by the director's order and under rule 1.4. In view of this acceptance of the letter of explanation of July 25, 1951, as an abatement, it is not proper or equitable to treat the alleged emission of August 24, 1951, as a continuation of the violation charged as of July 18, 1951. Nor can it be said that the violations alleged in the words '' at divers times prior thereto '', amplified by respondents' bill of particulars, occurring on dates from August 13, 1951, to and including August 24, 1951, were a continuation

of the violation of July 18, 1951. The respondents reply that to hold that a separate notice was required for each separate violation would effectively emasculate the law and prevent any prosecution even for continued, deliberate and intentional violations. For, they argue, if each violation is separate and apart and each entails the administrative procedure which is claimed by petitioner, it would be impractical, if not impossible, ever to get down to a charge which could be presented in the criminal courts as a violation of the Administrative Code or the rules and regulations of the smoke control board. It is stated as a conclusion that in such event each charge of violation would commence and end in the department, it would be necessary to treat a continuing violation as a series of separate and distinct individual violations unrelated and a preceding violation would have no bearing upon a succeeding one, and no violation, however serious, deliberate or intentional could result in a criminal prosecution.

The above argument does not appear to be founded in a true concept of due procedure when applied to charges of acts punishable in a criminal court. If notice to remedy is essential, reasonably such notice would be required for any separate act charged as the ground of a criminal prosecution. Guilt at a particular time does not necessarily or logically follow from guilt of a similar act in the past, even though for limited purposes evidence thereof might be relevant either at trial, or in the event of conviction, upon sentence.

The charge here is in respect of an excess emission of dense smoke. This, if proved by competent evidence, would be a violation of rule or regulation 1.1.1:

" 1. *Emissions Prohibited*

" 1.1 *Smoke*

" 1.1.1 No person shall cause, suffer or allow dense smoke to be emitted into the open air from any fuel burning equipment, internal combustion engine, locomotive, marine craft, motor vehicle, open fire, premises or vessel, within the City of New York or upon waters within the jurisdiction of said city."

More to the point then is respondents' position that the provisions of title D of chapter 26 of the Administrative Code, known as the Smoke Control Law, do not require that an order be issued prior to commencement of a prosecution for a prohibited emission of smoke. The law, it is asserted, is intended as a dual attack upon the problem of smoke control. Two separate and distinct remedial methods are provided: one is punitive and the other preventive. The question still remains

as to whether resort may be had to any punitive procedure in the Magistrate's Court without service of notice of violation and opportunity to be heard before the smoke control board.

While in the exercise of the civil law functions conferred upon it by the local law, the smoke control bureau has complete jurisdiction over the construction, repair and alteration of fuel burning installations, the primary powers conferred in respect thereof do not prohibit or impede resort to the criminal law, procedure and courts for enforcement of the punitive provisions of the local law in respect of the emission of dense smoke.

It has been said that were it not for the power of the winds in dispersing smoke, life in an industrial city would be an extreme hardship, as the atmosphere would then become suffocating, as witness Donora, Pennsylvania, October, 1948, with eighteen deaths and 5,910 illnesses within five days. The terms '' smoke '' and '' dense smoke '' are defined in the rules and regulations of the bureau of smoke control, but their composition as well as cause by incomplete combustion of fuels have been commonly known for many centuries. As far back as 1273 the English Parliament enacted legislation prohibiting the use of '' sea cole '' as fuel in order to prevent noxious smoke and vapors. Smoke is the gaseous product of burning organic material when rendered visible by the presence of small particles of carbon which finally settle as soot; also the fumes from burning metals and other substances. (Webster's New International Dictionary [1928 ed.].) It is said that smoke often contains such substances as formaldehyde, arsenic and sulphurous compounds and such gases as fluorine, ammonia, chlorine and carbon monoxide.

Assuming smoke carrying such noxious substances or gases, emitted willfully or in disregard of public health and safety such as would constitute an offense within the rules and regulations and the provisions of the act, it is not reasonable to say that notice of and opportunity for hearing before the smoke control board is required as a prerequisite to prosecution in the Magistrate's Court (*People* v. *Schwartz,* 298 N. Y. 551).

Regulatory provisions requiring administrative procedure in the enforcement of standards of construction, installation, repair and alteration are within the cognizance of the civil law. The enforcement of prohibitive provisions, for the violation of which fine or imprisonment is the penalty, is usually regarded as within the purview of the criminal law, to be enforced by resort to the criminal courts. Subdivision 1.1.1 of rule I prohibits the emission of dense smoke into the open air. While a

violation might be corrected by resort to civil law administrative procedures, a punitive method more severe in character and undoubtedly more effective is also provided by subdivision k of section D26–1.0: '' k. Penalties — Any person convicted of violating any of the provisions of this title, or of violating any rule or regulation of the board, or any order made or decision rendered by the board or the director pursuant to this title and the rules and regulations adopted pursuant thereto, shall be punishable by a fine of not less than twenty-five dollars nor more than one hundred dollars, or by imprisonment for not more than three months, or both, for the first offense, and by a fine of not less than fifty dollars nor more than five hundred dollars, or by imprisonment for not more than six months, or both, for a second or subsequent offense.'' This latter section obviously is a remedy requiring resort to criminal law and procedure.

On the other hand, under the preventive method, provision is made by the rules and regulations whereby, through scientific engineering control and improvement of fuel burning apparatus, equipment and installations for heat, power and incineration, abatement of the smoke nuisance would be effected. As part of the approved pattern of smoke control, rules and regulations 1.4 to 16 inclusive and rule 19 were adopted by the board. These rules and regulations provide for an order by the director to abate a violation, sealing of equipment, permits for construction, installation or alteration of equipment, licensing, and for appeals from orders or decisions of the director. These provisions are regulatory and set forth the administrative *modus operandi* for the control of emissions and of the fuel burning installations from which emissions are made into the open air.

The director is interested primarily in the elimination of the smoke nuisance. Because of this interest, it may be assumed that the order or notice dated July 18, 1951, was served. It may well be that if no other violation occurred, petitioner's letter of explanation would have been accepted as a satisfactory reason for ending any action by the director. The director, however, upon the reports of inspectors of later violations could well have decided to avail himself of the punitive provisions of the law. Accordingly, the filing of the affidavit of complaint or information, upon which the summons was issued and served upon the petitioner, would be warranted. The reasoning in the case of *People ex rel. Gross* v. *Adams* (270 App. Div. 607, affd. 296 N. Y. 604, *supra*) seems appropriate here. There the charge was the receiving of rent or other consideration where a maxi-

mum rent was prescribed by regulation or order of the Office of Price Administration (U. S.) in violation of New York City Local Law 34 of 1945.

It does not seem to be reasonable to theorize that it was the intent either of the city council or of the board to eliminate criminal prosecutions. On the contrary, the language of the act indicates the use of the dual method outlined for the purpose of securing better enforcement, control and reduction of atmospheric pollution. By providing that a violation of the law would not stigmatize the offender as guilty of a misdemeanor, but that such violation would merely be an offense, the intention was to seek quicker and more fitting and appropriate enforcement of the law. (Cf. *People ex rel. Gross* v. *Adams, supra,* p. 610.) In effect, the prosecution here does not differ in its implications from that in *People* v. *Cunard White Star Line Ltd.* (280 N. Y. 413). As there indicated, it must also be assumed here that the trial court will permit petitioner to give full proof by competent evidence of the reasonable precautions taken to prevent the emission of smoke from its stacks or chimneys.

Aside from any questions of notice and of jurisdiction in the smoke control board in the first instance to hear and determine alleged violations of its rules, it appears that the Magistrate's Court has jurisdiction of the offense charged. The argument of petitioner, that months would lapse before appellate tribunals could pass upon the jurisdictional question presented, does not warrant the granting of this extraordinary remedy. The writ of prohibition is issued, not as a matter of right but only in the exercise of sound judicial discretion when there is no other remedy. Ordinarily, it is allowed to prevent an attempted exercise of asserted power by a court or judicial officer acting without jurisdiction. It may be granted to prevent a threatened abuse of power, clearly amounting to an illegal invasion of substantial right. It is justified only in the case of extreme necessity, when the " grievance cannot ' be redressed by ordinary proceedings at law, or in equity or by appeal.' " (*People ex rel. Livingston* v. *Wyatt,* 186 N. Y. 383, 393–394; see, also, *Matter of Mosner* v. *Haddock,* 268 App. Div. 752; *People ex rel. New York Disposal Corp.* v. *Freschi,* 173 App. Div. 189, 190; 10 Carmody on New York Practice, § 815, and Civ. Prac. Act, § 1285.)

The application is denied and the petition dismissed.