590 A.2d 784

**Robert J. RIMPA, Appellant at No. 00874 Pittsburgh 1990,**

v.

**ERIE INSURANCE EXCHANGE, Appellant
at No. 00873 Pittsburgh 1990.**

Superior Court of Pennsylvania.

Argued Jan. 15, 1991.

Filed May 3, 1991.

Marcia H. Haller, Erie, for Erie Ins. Exchange, appellant (at 873) and appellee (at 874).

Frank C. Fogl, III, Erie, for Rimpa, appellant (at 874) and appellee (at 873).

Before ROWLEY, President Judge, and DEL SOLE and MONTGOMERY, JJ.

MONTGOMERY, Judge:

This action was instituted by the plaintiff seeking motor vehicle insurance benefits from the defendant insurer. Both parties filed motions for summary judgment prior to trial. After consideration, the trial judge denied the insurer's motion for summary judgment and granted partial summary judgment to the plaintiff. Subsequently, the plaintiff filed a petition for counsel fees, which was denied by the court. Thereafter, the defendant insurer appealed to our court, at No. 00873 Pittsburgh 1990, contending that the trial court erred in awarding summary judgment to the plaintiff and benefits under the applicable vehicle insurance policy. The plaintiff filed an appeal at No. 00874 Pittsburgh 1990, challenging the court's denial of his request for an award of attorney fees. The appeals have been consolidated for consideration by our court.

The record shows that on September 30, 1987, plaintiff Robert J. Rimpa was employed at his father's automobile service station in Union City. On that date, a customer brought his motor vehicle to the facility to have a tire repaired. The plaintiff began to repair the tire while it was still mounted on the vehicle. The repair process involved sticking a metal probe into a hole in the tire. When Rimpa did so, the tire unexpectedly exploded, causing him bodily injuries and subsequent disability.

Because his injuries arose in the course of his employment, the plaintiff has received income and medical payment benefits from his employer's workers' compensation policy, which was issued by defendant Erie Insurance Exchange. As of the date of the accident, the plaintiff had a policy of motor vehicle insurance which was also issued by the defendant. This policy provided coverage in accordance with the requirements of the Pennsylvania Motor Vehicle Financial Responsibility Law. Act of February 12, 1984, P.L. 26, No. 11, § 3, 75 Pa.C.S. § 1701, *et seq.*, effective October 1, 1984. *Inter alia*, the motor vehicle policy provided for first party income loss benefits in the amount of $1,000.00 per month, up to a maximum benefit of $15,000.00.

Because the plaintiff's weekly workmen's compensation income benefit was less than his average pre-injury earnings, he instituted a claim with Erie for payment of such excess loss of income under the income loss benefit provision of his motor vehicle insurance policy. Erie denied the plaintiff's claim for such benefits, under a provision of the applicable policy which excluded coverage for wage loss for "... any person engaged in the business of repairing, servicing, or otherwise maintaining motor vehicles if the bodily injury arises out of that business unless the conduct occurs off the business premises."

Thereafter, Mr. Rimpa instituted the instant action, wherein he claims that the aforesaid exclusion in the defendant's policy of motor vehicle insurance was unenforceable because it conflicted with the provisions of our Motor

Vehicle Financial Responsibility Law. In agreement with the plaintiff, the trial court ruled that the policy provision which excluded coverage for garagemen, for bodily injuries arising out of repairing, servicing or otherwise maintaining motor vehicles on the business premises, conflicted with the provisions of the Financial Responsibility Law. Erie challenges that determination on its appeal.

■ Both parties in these appeals, and the trial court in its opinion, have cited some provisions of the presently effective Motor Vehicle Financial Responsibility Law, as well as sections of the prior Pennsylvania No-fault Motor Vehicle Insurance Act, Act of July 19, 1974, P.L. 489, No. 176, 40 P.S. § 1009.101, *et seq.*, repealed by the Act of February 12, 1984, P.L. 26, No. 11, effective October 1, 1984. The No-fault Act provided for motor vehicle insurance policies to cover claims for injury or damages arising out of "maintenance or use of a motor vehicle", which phrase was specifically defined under the No-fault law as meaning:

> ... Maintenance or use of a motor vehicle as a vehicle, including, incident to its maintenance or use as a vehicle, occupying, entering into, or alighting from it.

However, the No-fault Act also stated:

> Maintenance or use of a motor vehicle does not include: (A) Conduct within the course of a business of repairing, servicing or otherwise maintaining motor vehicles unless the conduct occurs off the business premises;

The subsequently enacted Motor Vehicle Financial Responsibility Law provides that insurance policies should be issued by insurers providing for first party benefits "... with respect to injury arising out of the maintenance or use of a motor vehicle...." 75 Pa.C.S. § 1712. While the Financial Responsibility Law does set forth certain exclusions from coverage (75 Pa.C.S. § 1718), the statute does not exclude from coverage any injury arising out of the business of repairing, servicing or maintaining motor vehicles, similar to the exclusionary provision of the prior No-

fault Act or the language in the Erie vehicle policy in issue in this case.

As noted earlier, the plaintiff argues that the garage-mens' exclusion in the defendant's policy is in conflict with the requirements of the Motor Vehicle Financial Responsibility Law. The defendant strongly urges that the policy exclusion in question is in conformity with that legislation, and entirely consistent with its provisions. Both of the parties ask our court to apply various maxims of statutory construction in order to resolve this issue.

Erie points out that a critical issue in this case is the interpretation of the term "maintenance or use of a motor vehicle" in the provision of the Motor Vehicle Financial Responsibility Law which requires insurers to provide certain coverages or benefits in their policies. See 75 Pa.C.S. § 1712. As noted earlier, "maintenance or use of a motor vehicle" is not defined in the Motor Vehicle Financial Responsibility Law. Erie contends that such phrasing must be construed to include a proviso for the exclusion of coverage for garagemen, consistent with the exclusionary clause in issue in the Erie policy.

In maintaining this position, Erie cites some provisions of the Statutory Construction Act, Act of December 6, 1972, P.L. 1339, No. 290, § 3, 1 Pa.C.S. § 1901, *et seq.* The insurer notes that while words and phrases are to be construed according to their plain meaning, if a phrase has acquired a peculiar and appropriate meaning, it is to be construed according to such peculiar and appropriate meaning. 1 Pa.C.S. § 1903(a). Erie contends that in interpreting a statute to effectuate legislative intent, when the words in issue are not explicit, the legislative intent may be determined by considering, among other matters, the circumstances under which the statute was enacted, former law, if any, including other statutes upon the same or similar objects, as well as the consequences of a particular interpretation. 1 Pa.C.S. § 1921(c)(2), (5) and (6).

Erie argues that the phrase "maintenance or use of a motor vehicle" acquired a peculiar and appropriate meaning

in the context of automobile insurance law by virtue of the definition given to that phrase by the legislature in the No-fault Act. *Inter alia*, that definition included a specific exclusion for garagemen who incurred injuries while engaged in the course of their labors in a vehicle service facility. The defendant points out that the exclusion in its automobile insurance policy tracks the language of the No-fault Act. Accordingly, it is the position of Erie that applying the No-fault Act definition of the phrase "maintenance or use of a motor vehicle" to the Motor Vehicle Financial Responsibility Law, the policy exclusion for garagemen is entirely consistent with the intent and policy of the Financial Responsibility statute. In support of this contention, Erie asserts that the courts of our Commonwealth have previously relied upon the law as developed under the No-fault Act to interpret the provisions of the Motor Vehicle Financial Responsibility Law, citing *Roach v. Port Authority of Allegheny County*, 380 Pa.Super. 28, 550 A.2d 1346 (1988). In *Roach*, the plaintiff bus passenger was injured when a fight broke out between two other passengers. Her claim was denied as not arising out of the maintenance or use of a motor vehicle. In affirming the denial of benefits, our court, in the context of that case, considered a definition of the phrase "maintenance or use" as interpreted under the prior No-fault Act.

In opposition to the analysis urged by the defendant insurer, the plaintiff contends that the application of appropriate rules of statutory construction mandates a determination that the policy provision in issue contravenes the requirements of the Motor Vehicle Financial Responsibility Law. The plaintiff points out that the insurer is requesting that exclusions be read into the Financial Responsibility Law that were purposely excluded or deleted from the newer law by the legislature. Mr. Rimpa maintains that we must apply the rule of statutory construction that the deletion of statutory language by the legislature should be considered to render such language inoperative and indicates that the legislature has expressed a different intent.

See *Lookenbill v. Garrett*, 340 Pa.Super. 435, 490 A.2d 857 (1985). Further, the plaintiff notes that in holding in his favor, the trial court relied, in part, on the maxim *expressio unius est exclusio alterius*, the principle that where some things are specifically designated in a statute, things not so designated should be understood as having been excluded.

In urging this position, the plaintiff relies heavily upon the decision of our court in *Omodio v. Aetna Life and Casualty*, 384 Pa.Super. 544, 559 A.2d 570 (1989), a case also cited as directly applicable authority by the trial court. In *Omodio*, the plaintiff suffered a work-related injury while loading a truck. Although he received workmen's compensation benefits, John Omodio filed an action, like the plaintiff in the instant case, seeking to recover excess wage loss benefits from his own motor vehicle insurance carrier. Aetna denied the claim based upon an exclusion in its policy with respect to any injuries sustained by a person as a direct result of loading or unloading any motor vehicle. The prior No-fault Act had excluded loading or unloading of a motor vehicle from the meaning of "maintenance or use of a motor vehicle", unless the conduct occurred while the person was occupying, entering into, or alighting from the vehicle. The Financial Responsibility Law did not contain such a specific exclusion with regard to the loading or unloading of motor vehicles. The trial court in *Omodio* ruled that because the loading or unloading of motor vehicles was not designated as a specific exclusion under the Financial Responsibility Law, Aetna's policy exclusion was in derogation of applicable law and contrary to the intent of the general assembly, based upon the rule that *expressio unius est exclusio alterius*. On appeal, our court affirmed the trial court's action, and agreed with the view that the omission of the loading and unloading exclusion from the Financial Responsibility Law evidenced a legislative intent that the class of victims engaged in such loading and unloading operations was intended to receive coverage. *Omodio v. Aetna Life and Casualty, id.*, 384 Pa.Superior Ct. at 550, 559 A.2d at 573. The trial court in the instant

case ruled that the conduct of garagemen in repairing or servicing motor vehicles, which had been specifically excluded under the No-fault Act, was intended by the legislature to be a covered activity under the subsequently enacted Financial Responsibility Law, as evidenced by the legislature's deletion of the garagemens' exclusion in its enactment of the latter statute.

Erie also cites the *Omodio* decision in its brief, contending that it was misinterpreted by the trial court. In fact, Erie argues that the *Omodio* decision supports its own position that the garagemens' exclusion continues to be valid under the Motor Vehicle Financial Responsibility Law. The defendant points out that our court in *Omodio* noted that the omission of the "maintenance or use" definition from the Financial Responsibility Law should not automatically be taken to indicate a legislative disapproval of coverage in the situation presented in the *Omodio* case. Moreover, Erie argues that in the *Omodio* decision, our court limited its holding to the situation where the injured party was inside the vehicle while loading and/or unloading it, thus restricting the decision to a very narrow context.

We agree with the plaintiff in this case that the *Omodio* holding was not as narrow as is asserted by the defendant insurer. In *Callahan v. Federal Kemper Insurance Company*, 390 Pa.Super. 201, 568 A.2d 264 (1989) our court was presented with the issue of whether an automobile policy exclusion which denied coverage for bodily injury sustains as a result of "loading or unloading a motor vehicle" would be valid under the Motor Vehicle Financial Responsibility Law. Citing the holding in *Omodio,* our court held that a provision in an automobile insurance policy which excluded injuries sustained as a direct result of loading and unloading from the first party benefits coverage of a motor vehicle insurance policy contravened the Financial Responsibility Law and was therefore invalid. It was ruled that the loading and unloading activities in question fit within the meaning of "maintenance and use" terminology of the Financial Responsibility Law. Accordingly, it is clear that

the *Omodio* holding may not be considered to be as narrow as is now urged by Erie Insurance Exchange.

The decision in *Omodio* obviously provides guidance to us in the resolution of the instant appeal. The plaintiff would have us rely entirely upon the construction principle *expressio unius est exclusio alterius* to find that because the legislature omitted the garagemens' exclusion which had been part of the No-fault Act, when it enacted the subsequent Motor Vehicle Financial Responsibility Law, such exclusion, standing alone, indicated an intent to provide for coverage for garagemens' activities under the newer law. However, in *Omodio,* our court recognized that the omission of the "maintenance or use" definition from the Financial Responsibility Law should not *automatically* be taken to indicate a legislative intent to provide coverage for formerly excluded situations. Instead, we should examine the activity in issue in each case to see whether it is covered by the language the legislature has provided us in the presently-applicable law.

It is evident that in *Omodio,* our court resolved the issue presented by determining whether the vehicle loading activity, in which Mr. Omodio suffered his injury, could be construed to be "use" of a motor vehicle within the intended meaning of the "maintenance or use" provision of the Financial Responsibility Law. More recently, in *Huber v. Erie Insurance Exchange,* 402 Pa.Super. 443, 587 A.2d 333 (1991) our court addressed a situation in which an insured also sought first party medical benefits as a result of injuries which occurred while he was loading material onto his vehicle. In affirming the trial court's order which rejected the claim, our court made it plain that our fundamental responsibility in such cases is to determine whether the specific activity in which the insurance claimant was involved at the time of his injury may be considered to fall within the "maintenance or use" language of the Motor Vehicle Financial Responsibility Law. As stated in *Huber,* "... we must return to the 'maintenance or use' language to determine whether appellant's injuries are compensable."

402 Pa.Super. at 446, 587 A.2d at 334. That is also our task in the instant case.

The trial court determined, as a factual matter, that plaintiff Robert J. Rimpa was involved in the "maintenance" of the vehicle he was working on when the tire exploded. That determination is not challenged on this appeal by Erie Insurance Exchange. Instead, Erie relies upon its policy exclusion which would deny coverage to a garageman who is injured while involved in maintenance on a vehicle at his place of business. However, the Motor Vehicle Financial Responsibility Law clearly commands that coverage be made available "... with respect to injury arising out of the *maintenance* ... of a motor vehicle...." (75 Pa.C.S. § 1712, emphasis supplied) It is beyond dispute that the Erie policy specifically excludes activities involved in motor vehicle maintenance, despite the express provision in the applicable law which mandates that insurers provide coverage for injuries arising in the course of the maintenance of a vehicle.

Thus, it is manifest that the Erie exclusion must be considered in direct contravention to the applicable statute, unless there is some other countervailing statutory provision which would support the policy exclusion. Erie has not cited any provision of the Motor Vehicle Financial Responsibility Law which could arguably be interpreted to authorize the "maintenance" exclusion Erie has written into its policy. In the face of the obvious conflict between the insurance contract exclusion and the unambiguous dictates of the applicable law, we must hold that the trial court ruled correctly that Erie's garagemens' policy exclusion is invalid and unenforceable under current law.

In essence, the interpretation assignment we have in this case is not a difficult one. The applicable law mandates that coverage be extended to those injured while engaged in maintenance of vehicles. The policy provision relied upon by the defendant insurer explicitly excludes maintenance activities from coverage when they are engaged in by a certain class of individuals, employed in vehicle servicing

functions at the time of their injuries. There is no statutory support to validate such an exclusion.

We cannot ignore the well-recognized rule that the Financial Responsibility Law is to be liberally construed. *Persik v. Nationwide Mutual Insurance Company*, 382 Pa.Super. 29, 554 A.2d 930 (1989). We are also mindful that insurance policies are to be construed in a manner to afford the greatest possible protection to the insured. *Geisler v. Motorists Mutual Insurance Co.*, 382 Pa.Super. 622, 626, 556 A.2d 391, 393 (1989). Accordingly, we must agree with the trial court that the plaintiff is entitled to the coverage sought, and the defendant's policy exclusion must be deemed invalid as it is repugnant to the requirements of the Motor Vehicle Financial Responsibility Law.[1]

Finally, we address the claim raised by the plaintiff that the trial court erred in denying his claim for an award of attorney fees against the defendant insurer. An insurer will be held liable for the reasonable attorney fees incurred by the insured when the insurer's failure to pay a claim constitutes an unreasonable act which is clearly contrary to the terms of the policy and the Pennsylvania law.[2] *DeMichele v. Erie Insurance Exchange*, 385 Pa.Super. 634, 561 A.2d 1271 (1989). The trial court determined that the insurer's efforts to avoid coverage, through its analysis of precedents and presentation of theories of statutory interpretation, were reasonable in light of the facts of prior cases and the nuances of applicable law. The trial court concluded that although it did not find such insurer argu-

1. The insurer also raises the contention that it should not be required to pay motor vehicle insurance policy benefits because of its status as a workmen's compensation carrier in the case. It cites a claimed effect upon its subrogation rights. However, it provides no statutory or case authority to support this position. We find this argument to be devoid of any arguable merit, and unworthy of extended discussion or analysis.

2. See 75 Pa.C.S. § 1716, which provides, in material part: "In the event the insurer is found to have acted in an unreasonable manner in refusing to pay the benefits when due, the insurer shall pay, in addition to the benefits owed and the interest thereon, a reasonable attorney fee based upon actual time expended."

ments to be convincing, it did not discern an indication that the defendant insurer acted unreasonably in denying the plaintiff's claim, given the unsettled state of the law governing the precise question presented. We can perceive no abuse of discretion by the trial court in reaching such conclusions, or in denying the plaintiff's request for an award of legal fees against the insurer. Therefore, we reject the plaintiff's contentions of error concerning this issue.

With regard to both appeals before us in this consolidated case, the judgment of the lower court is hereby affirmed.