## K & LEE CORPORATION

### v.

## SCOTTSDALE INSURANCE COMPANY.

### Civ. A. No. 90–1789.

United States District Court,
E.D. Pennsylvania.

July 1, 1991.

Dante Mattioni, Robert R. Hyde, Philadelphia, Pa., for plaintiff.

Marc I. Bressman, Philadelphia, Pa., for defendant.

## MEMORANDUM

WALDMAN, District Judge.

Plaintiff alleges that defendant improperly denied coverage under a fire and extended risk policy for contamination of plaintiff's inventory caused by invisible ethyl acetate vapors. Plaintiff contends that because the policy insures against smoke damage, defendant has breached its contract and acted in bad faith by denying coverage. Defendant contends that the chemical vapors were not "smoke" within the meaning of the policy and has moved for summary judgment. Plaintiff filed a cross-motion for summary judgment on the issue of liability.

## I. LEGAL STANDARD

In considering a motion for summary judgment, the court must determine whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact, and whether the moving party is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56(c). *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); *Arnold Pontiac–GMC, Inc. v. General Motors Corporation*, 786 F.2d 564, 568 (3d Cir.1986); *Fragale & Sons Beverage Co. v. Dill*, 760 F.2d 469, 472 (3d Cir.1985); *Wolk v. Saks Fifth Avenue, Inc.*, 728 F.2d 221, 224 (3d Cir. 1984); *First Jersey National Bank v. Dome Petroleum Limited*, 723 F.2d 335, 338 (3d Cir.1983). Only facts that may affect the outcome of a case under applicable law are "material." *Anderson, supra*, 477 U.S. at 248, 106 S.Ct. at 2510.

All reasonable inferences from the record must be drawn in favor of the non-moving party. *Anderson, supra*, at 256, 106 S.Ct. at 2514. The movant has the burden of demonstrating an absence of genuine issues of material fact. *Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir.1985); *United States v. Athlone Industries, Inc.*, 746 F.2d 977, 981–82 (3d Cir.1984); *Small v. Seldows Stationary*, 617 F.2d 992, 994 (3d Cir.1980). The non-movant then must identify evidence on which a verdict in his favor could be sustained. *Childers v. Joseph*, 842 F.2d 689 (3rd Cir.1987).

## II. FACTS

Plaintiff operated a wholesale grocery business in North Philadelphia. On December 15, 1988, plaintiff purchased a standard form fire and extended coverage policy for its inventory from defendant Scottsdale, an Arizona corporation, through the Joseph H. Tyson & Company brokerage firm, located in Philadelphia.

On March 20, 1989, plaintiff's two owners noticed a chemical smell in their warehouse and a chemical substance leaking from the second floor, which was not under their control. The liquid had dripped on to some of their inventory. Thirty-six samples were sent to Lancaster Laboratories and traces of ethyl acetate were found on many of the items.

On March 23, 1989, plaintiff's counsel notified Tyson of the incident and on April 7, 1989, plaintiff's counsel attempted to notify Scottsdale Insurance Company directly. The letter, however, was sent to an old address on the declaration page of the policy, and was returned. On April 18, 1989, after obtaining defendant's new address, plaintiff sent a second letter to defendant.

On April 26, 1989, defendant requested a third party investigative agency, Louis Dawson & Son, to investigate the incident. The following day, Mr. Baxt of Louis Dawson informed plaintiff's counsel that it could not investigate until it received a signed non-waiver. *See* Letter from Ben Baxt (April 27, 1989); Affidavit of Ben Baxt, at ¶ 3. After receiving no response, Mr. Baxt sent a second letter on May 26, 1989 requesting the non-waiver. *See* Baxt Affidavit, at ¶ 4.

On May 30, 1989, before any investigation by the insurer ensued, the contents of plaintiff's warehouse were destroyed. Plaintiff contends that the destruction was pursuant to a Philadelphia Department of Public Health order of April 10, 1989 which condemned the contents. That order, however, required that the contents be destroyed by April 24, 1989. It is not clear why the contents were only destroyed on May 30, 1989 or if Scottsdale was ever informed of the impending dates. In any event, plaintiff did not execute the required non-waiver until June 22, 1989. *See* Baxt Affidavit, at ¶ 4.

In November 1989, plaintiff submitted its claim and on January 12, 1990, defendant's senior claim examiner, Ms. Shirlee Blount, denied coverage.

On March 14, 1990, plaintiff filed the present action seeking damages for breach of contract and bad faith denial. Plaintiff also asserts claims under the Arizona Unfair Insurance Practices Act and the Arizona Consumer Fraud Act.[1]

## III. DISCUSSION

### A. *Breach of Contract Claim*

Defendant contends that the damage in question is not covered under the standard extended fire insurance policy purchased by plaintiff. The policy provides as follows:

> This policy insures against all direct loss caused by:
>
> 1. FIRE OR LIGHTNING.
>
> .   .   .   .   .
>
> *This policy is extended to insure against direct loss by Windstorm, Hail, Smoke, Explosion, Riot, Riot Attending a Strike, Civil Commotion, Aircraft And Vehicles as hereinafter provided, only when premium for EXTENDED COVERAGE is shown on the first page of this policy or by endorsement.*
>
> 3. WINDSTORM OR HAIL ...
>
> 4. SMOKE, meaning sudden and accidental damage from smoke, other than smoke from agricultural smudging or industrial operations.

Insurance Policy, at § VI.

The issue is whether coverage for "smoke" damage encompasses contamination by chemical vapors. There are no Pennsylvania cases directly on point. The court must predict how the Pennsylvania Supreme Court would decide the issue.

The principles which govern interpretation of a contract of insurance under Pennsylvania law are well settled. The task of interpreting a contract must generally be performed by the court. *See Gonzalez v. United States Steel Corp.,* 484 Pa. 277, 398 A.2d 1378 (1979); *Community College of Beaver County v. Society of the Faculty,* 473 Pa. 576, 375 A.2d 1267 (1977). The goal is to ascertain the intent of the parties as manifested by the language of the writ-

---

**1.** Pennsylvania's conflict of law analysis dictates that the interpretation of insurance contracts is governed by the law of the state where the insurance policy is issued and delivered. *Pittsburgh–Bridge & Iron Works v. Liberty Mutual Insurance Company,* 444 F.2d 1286 (3d Cir. 1971); *Federal Insurance Company v. General Machine Corporation,* 699 F.Supp. 490, 494 n. 4 (E.D.Pa.1988). In the present case, the policy was purchased by and delivered to plaintiff in Pennsylvania. Also, both parties cite Pennsylvania law throughout their respective briefs. *See Mellon Bank, N.S. v. Aetna Business Credit,* 619 F.2d 1001, 1005 n. 1 (3d Cir.1980).

ten instrument. *See Mohn v. American Casualty Co. of Reading*, 458 Pa. 576, 326 A.2d 346 (1974). The court must read the insurance policy as a whole and construe it according to the plain meaning of its terms. *C.H. Heist Caribe Corp. v. American Home Assurance Company*, 640 F.2d 479, 481 (3d Cir.1981).

▇▇ A term is ambiguous only if reasonable people, considering it in the context of the entire policy, would honestly ascribe different meanings to it. *Northbrook Insurance Co. v. Kuljian Corp.*, 690 F.2d 368, 372 (3d Cir.1982); *United Servs. Auto. Ass'n v. Elitzky*, 358 Pa.Super. 362, 369, 517 A.2d 982 (1986). Where an ambiguity is found, the provision should be construed against the insurer as the drafter of the agreement. *C.H. Heist*, 640 F.2d at 481; *Safeguard Scientifics, Inc. v. Liberty Mutual Insurance Co.*, 766 F.Supp. 324 (E.D.Pa.1991); *Lazovick v. Sun Life Insurance Company of America*, 586 F.Supp. 918, 922 (E.D.Pa.1984) (citing *Mohn*, 458 Pa. at 586, 326 A.2d 346). A court, however, should not torture the language of the policy to create ambiguities. *Eastern Associated Coal Corp. v. Aetna Casualty & Surety Co.*, 632 F.2d 1068, 1075 (3d Cir.1980).

Where the language of the contract is clear, a court is required to give the words their ordinary meaning. *Northbrook*, 690 F.2d at 372; *Pennsylvania Manufacturers' Ass'n Insurance Co. v. Aetna Casualty & Surety Insurance Co.*, 426 Pa. 453, 233 A.2d 548 (1967).

▇▇ Plaintiff relies on *Henri's Food Products Co. v. Home Insurance Company*, 474 F.Supp. 889 (E.D.Wis.1979), in which the insured's products were contaminated by vapor from agricultural chemicals. The court, citing Webster's Third International Dictionary and its "own understanding" of the word smoke, held that the vapor in question was smoke with-

in the meaning of the extended coverage policy in question. Respectfully, this court cannot concur and does not believe that the state Supreme Court would adopt such a holding. The court in *Henri's Food Products* relied on one of seventeen definitions of smoke in Webster's which refers to fumes or vapors caused by the reaction of moisture to heat.

An unabridged comprehensive dictionary lists every conceivable usage of words, including those that are arcane, archaic and obscure. While smoke *may* result from some chemical reactions, the common usage of the term refers to the products of combustion and, more importantly, to matter that is visible.[2] Indeed, even the definition relied on by the court in *Henri's Food Products* appears to posit some visible matter. When something wet is dropped onto something hot, in this court's "understanding" the result is a sizzling sound and the appearance of visible smoky or steamy matter. Ethyl acetate vapor is invisible. *See* Affidavit of Daniel Perlmutter, at ¶ 5; Deposition of Richard Kim, at 34–35. Moreover, the issue is not whether the term can be defined in multiple ways. The issue is whether reasonable people, considering the term in the context of the entire policy, could honestly perceive different particular meanings. *Northbrook*, 690 F.2d at 372.

In the context of life insurance policies, courts have held that "[t]o a person of average understanding," a vapor would not be regarded as "smoke." *Capital Bank & Trust Company v. Equitable Life Assurance Society of the United States*, 542 So.2d 494, 496 (La.1989); *Stuart v. Occidental Life Insurance Co.*, 156 Or. 522, 68 P.2d 1037 (1937). Smoke has been defined in the context of environmental regulations as the visible product of combustion. *See Aubertel v. Consolidated Edison Compa-*

---

**2.** The McGraw–Hill Encyclopedia of Science & Technology (6th ed. 1987) defines smoke as:

A dispersion of small, solid particles and liquid droplets suspended in a gaseous medium, usually produced by a combustion process....

Smokes can also be produced by chemical reactions or by mechanical generators such as atomizers or nebulizers.... These chemical smokes are used for such things as airflow visualization, theatrical effects, vision obscurants for crowd control or by the military, and as daylight signaling devices.

*ny of New York,* 116 N.Y.S.2d 555, 558 (1952) (smoke is a visible exhalation from burning material); *State v. Mundet Cork Corporation,* 8 N.J. 359, 86 A.2d 1, 4 (1952) ("smoke includes visible products of combustion in the normally accepted sense"); *Consolidated Edison Company of New York v. Murtagh,* 201 Misc. 244, 108 N.Y.S.2d 688, 694 (1951) (smoke is the product of burning material when rendered visible by the presence of small particles of carbon). The court finds that invisible chemical vapor is not ordinarily and commonly understood to be "smoke," and believes that the Pennsylvania Supreme Court would agree.

Plaintiff argues, however, that certain language in the policy manifests the intention of the parties that the term smoke includes something more than visible smoke. Specifically plaintiff seeks to invoke the maxim *expressio unius est exclusio alterius*[3] (the doctrine of negative implication), arguing that by excluding only smoke from agricultural smudging and industrial operations, all other smoke is included. Plaintiff relies on *Koser v. American Casualty Company of Reading,* 162 Pa.Super. 63, 56 A.2d 301 (1948), in which the court held that the term "automobile" in an insurance policy was used in its generic sense and included a tractor. The policy in question contained a provision which provided that motorcycles and aircraft were not included in the term automobile and the court reasoned that by excluding these, the insurance company included every other kind of automobile.[4]

The clause in question does not exclude certain kinds of smoke but rather excludes coverage for smoke coming from certain *sources*—agricultural smudging and industrial operations. Thus, the analysis of *David v. National Union Fire Insurance Company,* 206 Pa.Super. 78, 211 A.2d 66 (1965) is more on point. In *David,* plaintiff sought to recover for smoke damage from an incinerator. The policy in question provided that smoke "means only smoke due to a sudden, unusual and faulty operation of any heating or cooking unit ... excluding, however, smoke from fireplaces or industrial apparatus." The Court declined to apply *Koser,* stating that by "excluding from coverage fireplaces and industrial apparatuses, the companies did not by implication include [smoke coming from] incinerators...." *Id.* at 84, 211 A.2d 66.

Thus, in this case, while damage from smoke from any *source* other than agricultural smudging and industrial operations may be covered, this does not mean that contamination by an invisible vapor not commonly and ordinarily understood to be a form of smoke is covered.

Plaintiff also argues that the nuclear exclusion provision manifests an intention that the term smoke includes matter which can be "invisible." The nuclear exclusion provides that:

> Loss by nuclear reaction or nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, or due to any act or condition incident to

**3.** The *expressio unius* principle means that "where some things are specifically designated in a statute, things not so designated should be understood as having been excluded." *Rimpa v. Erie Insurance Exchange,* 404 Pa.Super. 287, 590 A.2d 784 (1991); *see, e.g., Cali v. City of Philadelphia,* 406 Pa. 290, 177 A.2d 824 (1962); *Samilo v. Pennsylvania Insurance Department,* 98 Pa. Commw. 232, 510 A.2d 412 (1986). While generally a "rule" of statutory construction, the courts in Pennsylvania have used the *expressio unius* principle in interpreting insurance policies. *Slate Construction Company v. Bituminous Casualty Corporation,* 228 Pa.Super. 1, 8 n. 9, 323 A.2d 141 (1974); *Mutual of Omaha Insurance Company v. Bosses,* 428 Pa. 250, 252, 237 A.2d 218 (1968).

**4.** Similar reasoning was applied in *Snader v. London & Lancashire Indemnity Co. of America,* 360 Pa. 548, 62 A.2d 835 (1949). In *Snader,* an insurance policy provided for protection from accidents arising out of the ownership, maintenance or use of the premises, declared as the "Overlook Golf Course." Another provision provided that coverage does not apply to swimming pools or bathing beaches. Plaintiff was injured in a bathhouse located next to the pool, and the insurer denied coverage. The court held that there was coverage finding, *inter alia,* that "the exclusion shows the parties understood that, were it not for that clause, the coverage would have included the swimming pool and beaches, and, by the same token, all the other structures and operations on the premises." *Id.* at 551, 62 A.2d 835 (*citing Koser, supra* ).

any of the foregoing, is not insured against by this policy, whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by any of the perils insured against by this policy; and nuclear reaction or nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, is not "explosion" or "smoke."

■ The doctrine of negative implication is not an inflexible rule. *See Consumers Education and Protective Association v. Nolan,* 470 Pa. 372, 368 A.2d 675 (1977); *Big Beaver Falls Area School District v. Cucinelli,* 112 Pa.Commw. 341, 535 A.2d 1205 (1988). Its application depends on the particular circumstances of the case and the context in which the language at issue is used. *Id.* 347–48, 535 A.2d 1205. Specifically, the Court in *Big Beaver Falls* stated:

"Several Latin maxims masquerade as rules of interpretation while doing nothing more than describing results reached by other means. The best example of this is probably *expressio unius est exclusio alterius,* which is a rather elaborate, mysterious sounding and anachronistic way of describing the negative implication. Far from being a rule, it is not even lexicographically accurate, because it is simply not true, generally, that the mere express conferral of a right or the privilege in one kind of situation implies the denial of the equivalent right or privilege in other kinds. Sometimes it does and sometimes it does not, and whether it does or does not depends on the particular circumstances of context. Without contextual support, therefore, there is not even a mild presumption here. Accordingly, this maxim is at best a description after the fact, of what the court has discovered from context."

*Id.* at 347, 535 A.2d 1205 (*quoting* Reed Dickerson, The Interpretation and Application of Statutes, at 234–35 (1975)).

In *Paupst v. McKendry,* 187 Pa.Super. 646, 145 A.2d 725 (1958), the Court declined to apply the *expressio unius* reasoning of *Koser* and held that motorcycles were not automobiles within the context of the insurance policy in question. The Court reasoned that the term automobile was used in its ordinary sense which did not include motorcycle, and the fact that automobile was defined to include "motor vehicle" did not expand the term from its popular to a "generic" meaning so as to include a motorcycle. *Id.* at 652, 145 A.2d 725. The Court further noted that the reasoning in *Koser* was strained:

While the principle *expressio unius est exclusio alterius* is well recognized, one must indulge in rather fancy reasoning in order to expand the commonly understood word 'automobile' to the point that it will include a farm tractor merely by saying that the word 'automobile' is not to include a motorcycle or any vehicle or mechanical device for aerial navigation. While our court accomplished this result in the *Koser* case, we are unwilling to extend the reasoning to embrace the facts in the present case. After all, we are merely endeavoring to ascertain what the parties meant by their writing.

*Id.* at 653, 145 A.2d 725.

This analysis shows the similarly strained interpretation plaintiff urges in this case. Plaintiff seeks to expand the commonly understood term "smoke" to include invisible vapors formed by evaporating chemicals by noting that nuclear reaction and radiation are excluded from the term. A nuclear reaction may result in a plume of cloudy particulate matter which, if not expressly excluded, might be perceived as smoke. In any event, it simply is not reasonable to find that by excluding coverage for radiation damage, the parties intended that any other invisible contaminant be included in the term "smoke."

The court concludes that the nuclear exclusion does not operate to expand the term smoke beyond its common and ordinary meaning, and that invisible chemical vapors are not within the common usage of that term. Accordingly, the court holds that the loss sustained by plaintiff was not one for which it had purchased coverage in the policy in question, and thus defendant is

entitled to summary judgment on plaintiff's breach of contract claim.

### B. *Bad Faith Denial Claim*

■ Since defendant was entitled to deny plaintiff's claim for an uninsured loss, it follows that such denial could not have been in bad faith. Moreover, there is no applicable common law claim for bad faith denial in Pennsylvania. *See D'Ambrosio v. Pennsylvania Nat'l Mut. Cas. Ins. Co.,* 494 Pa. 501, 431 A.2d 966 (1981). Accordingly, defendant is entitled to summary judgment on plaintiff's bad faith denial claim.

### C. *Arizona Insurance Code Claim*

Plaintiff has also asserted a claim under the Arizona Insurance Code, Ariz.Rev.Stat. Ann. §§ 20–442, 20–443.[5] Plaintiff contends that defendant violated the statute by (1) failing to act promptly with respect to claims, (2) failing to adopt reasonable procedures with respect to claims and (3) not attempting to effectuate settlement of claims where the company's liability is clear.

■ Section 443 has been held to provide a basis for a private cause of action. *Sparks v. Republic National Life Insurance Company,* 132 Ariz. 529, 541, 647 P.2d 1127, 1139 (1982). The Court in *Sparks* suggested that the torts of bad faith and misrepresentation are within the purview of that section. *Id.* at 543, 647 P.2d at 1141. To establish a prima facie case of bad faith under Arizona law, an insured must show (1) the absence of a reasonable basis for the insurer's denial of policy benefits, and (2) the insurer's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim. *Noble v. National American Life Insurance Co.,* 128 Ariz. 188, 190, 624 P.2d 866, 868 (1981).

■ In *Sparks,* the Court stated that the primary focus of a bad faith inquiry is the reasonableness of the insurer's actions: "Any action taken by the insurer on a claim submitted by an insured will necessarily be an intentional act. Whether the action amounts to bad faith depends upon whether the insurer failed to honor a claim without a reasonable basis for doing so." 132 Ariz. at 538, 647 P.2d at 1136. The court has determined that Scottsdale's action in denying plaintiff's claim was reasonable on its face.

■ Plaintiff also alleges that defendant violated the insurance code by misrepresenting the terms of the policy in question. "Misrepresentation" is not defined in the Insurance Code. The courts in Arizona, however, have adopted the meaning employed in the context of the Consumer Fraud Act. *See Ward v. Fireman's Fund Insurance Companies,* 152 Ariz. 211, 217, 731 P.2d 106, 112 (1986). The test is whether the insurer's representations "had the capacity to mislead an ordinary person." *Id.*

Plaintiff nowhere alleges or identifies precisely what policy term was misrepresented. Further, there is absolutely no evidence of record that the defendant or its

---

**5.** Section 20–442 of the Insurance Code provides that:

> No person shall engage in this state in any trade practice which is prohibited by this article, or defined in this article as, or determined pursuant to this article to be, an unfair method of competition or an unfair or deceptive act or practice in the business of insurance. Section 20–443 provides in pertinent part:
> No person shall make, issue or circulate, or cause to be made, issued or circulated, any estimate, illustration, circular, sales material or statement:
> 1. Misrepresenting the terms of any policy issued or to be issued or the benefits or advantages promised thereby or the dividends or share of the surplus to be received thereon.

> 2. Making any false or misleading statement as to the dividends or share of surplus previously paid on similar policies.
> 3. Making any misleading representation or any misrepresentation as to the financial condition of any insurer or as to the legal reserve system upon which any life insurer operates.
> 4. Using any name or title of any policy or class of policies misrepresenting the true nature thereof.
> 5. Making any misrepresentation to any policyholder for the purpose of inducing or tending to induce such policyholder to lapse, forfeit, surrender, retain or convert any insurance policy.

broker misrepresented the risks covered by the policy in question. Indeed, plaintiff's own depositions refute such a finding. One of plaintiff's two owners testified that no explanation was given as to the scope of coverage they would be receiving and that they just assumed that all insurance was similar. Deposition of C.K. Lee, at 14.

There is no evidence from which one reasonably could find that there were any representations made which could lead an ordinary person to believe that contamination by invisible chemical vapors was a peril insured against by the policy in question. Accordingly, summary judgment will be granted for defendant on plaintiff's claim under the Arizona Insurance Code.

### D. *Consumer Protection Act Claim*

Plaintiff also alleges that defendant misrepresented the terms of its policy in violation of the Arizona Consumer Protection Act, Ariz.Rev.Stat.Ann. § 44–1522. The Act was enacted in 1967 and was patterned in large part on the Federal Trade Commission Act, 15 U.S.C. § 41–57. *People ex rel. Babbitt v. Green Acres Trust*, 127 Ariz. 160, 164, 618 P.2d 1086, 190 (App. 1980). The Act is designed to eliminate "unlawful practices" in merchant-consumer transactions. *Id.* In *Sellinger v. Freeway Mobile Homes Sales, Inc.*, 110 Ariz. 573, 521 P.2d 1119 (1974), the Arizona Supreme Court held that the Consumer Fraud Act inferentially created a private cause of action for deceptive sales practices.

The Act, in § 44–1522(A), includes within the definition of "unlawful practice" a misrepresentation of material fact made with intent that others rely upon it in connection with the sale or advertisement of any merchandise. As noted, where the allegation involves misrepresentations allegedly made regarding insurance coverage, the Insurance Code and the Consumer Protection Act are to be similarly applied. *See Ward, supra.*

There is no evidence from which one reasonably could find that any misrepresentation was made regarding coverage for contamination by invisible chemical vapors or otherwise. Accordingly, summary judg-

ment will be granted for defendant on plaintiff's claim under the Arizona Consumer Protection Act.